UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY AQUINO, individually and on behalf of all others similarly situated, | Civil Action No. |
| | **COMPLAINT** |
| Plaintiff, | Class and Collective Action |
| -vs- | Jury Trial Demanded |
| UBER TECHNOLOGIES, INC., RAISER, LLC, and SCHLEUDER, LLC, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Anthony Aquino ("Aquino" or "Plaintiff"), individually and on behalf of all other similarly situated persons, files this Class and Collective Action Complaint against Uber Technologies, Inc. and its wholly owned subsidiaries, Raiser, LLC and Schleuder, LLC (together "Defendant" or "Uber"), seeking all available relief for unpaid minimum wages, unpaid overtime wages, and unreimbursed business expenses pursuant to the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## NATURE OF THE ACTION

1. Plaintiff alleges, on behalf of himself and all similarly situated, current and former Uber drivers who opted out of the arbitration agreement in their employment agreements with Defendant, and who elect to opt into this action pursuant to the FLSA (hereinafter

1

"Collective Active Members"), that they are entitled to *inter alia*: (1) unpaid minimum wages; (2) unpaid overtime wages for hours worked above forty (40) in a work week, as required by law; (3) unreimbursed business expenses; and (4) and liquidated damages pursuant to the FLSA.

2.  Plaintiff also brings this action under NYLL pursuant to Fed. R. Civ. P. 23, on behalf of himself and all similarly situated current and former Uber drivers in the State of New York, who opted out of the arbitration agreement in their employment agreements with Defendant, and are entitled to, *inter alia,* unpaid minimum wages, unpaid overtime, social security and unemployment contributions and credits, and unreimbursed business expenses as required by the NYLL.

3.  Defendant violated the FSLA and NYLL by misclassifying Plaintiff and similarly situated employees as independent contractors and failing to pay these employees for all the hours worked at minimum wage after work-related expenses, by failing to pay them overtime wages and failing to reimburse their business-related expenses pursuant to Defendant's company policy for employees.  Plaintiff and all persons similarly situated are entitled to unpaid wages from Defendant for all hours worked by them at minimum wage after payment of work-related expenses, as well as unpaid overtime wages for hours in excess of forty (40) hours worked per work week, and unreimbursed business expenses pursuant to company policy.

4.  This Court has jurisdiction over Plaintiff's FSLA claims pursuant to 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331.

5.  This Court has jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453 and 1711-1715, and 28 U.S.C. § 1367. The parties are diverse and, on information and belief, the amount in

controversy exceeds $5,000,000, exclusive of interest and costs.

6. Plaintiff is a citizen of a State different from that of Defendant.

7. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

8. Plaintiff resides in this district.

9. Defendant regularly conducts business in this district.

## THE PARTIES

10. Plaintiff, ANTHONY AQUINO, is an individual residing in the Bronx, New York. Mr. Aquino has worked as a driver for Uber from April, 2022 to the present. On April 7, 2022, on April 13, 2022, and on April 20, 2022, respectively, Mr. Aquino notified Uber that he opted out of the arbitration agreement contained in his employment agreement, pursuant to section 15.2.8 of Uber's Technology Service Agreement, and/or section 12.8 "Your Right to Opt Out of this Arbitration Agreement".

11. While working for Uber, Mr. Aquino has driven passengers primarily within the Westchester County, New York. To date, Mr. Aquino has driven approximately 90 miles for Uber. His gross earnings were less than $50, and he incurred business related expenses including, for example, vehicle rideshare specific insurance, costing $119 per month, and incurred additional costs of $100 per month for vehicle maintenance. Mr. Aquino was not reimbursed for out-of-pocket expenses necessarily incurred on the job and required by Uber, including vehicle maintenance, gas, and insurance.

12. Uber was required to reimburse Mr. Aquino's business-related expenses under the terms of Uber's employee expense reimbursement policy. Uber's failure to reimburse Mr. Aquino for his business-related expenses under the terms of Uber's employee expense

reimbursement policy violated New York law.

13. As a result of Uber's failure to reimburse Mr. Aquino for his work- related expenses, Mr. Aquino was not paid minimum wage for all hours worked. Further, Mr. Aquino did not receive overtime pay for all hours worked in excess of forty hours per week as required by New York and Federal Laws.

14. Defendant Uber Technologies, Inc. ("Uber") is a transportation services companythat provides drivers hailed and dispatched through Uber's mobile phone application. Uber is headquartered in San Francisco, California.

15. Defendant Raiser, LLC is a wholly owned subsidiary of Uber and handles and processes all payments to Uber drivers ("Raiser"). Raiser is headquartered in San Francisco, California.

16. Defendant Schleuder, LLC ("Schleuder", and collectively with Uber and Raiser, "Defendant") is a subsidiary of Uber, incorporated with Colorado Department of State, and headquartered in San Francisco, California.

## FACTUAL ALLEGATIONS

17. Pursuant to Defendant's policy, pattern and/or practice, Defendant failed to pay Plaintiff and all similarly situated employees proper minimum wage, and failed to reimburse their business-related expenses per the terms of company policy. Defendant also failed to pay Plaintiff Aquino and similarly situated employees overtime wages when they worked in excess of 40 hours in a workweek.

18. The FLSA and NYLL require employers to provide their employees with sufficient reimbursements for employment related expenses ("kickbacks") to ensure that employees' hourly wages equal or exceed the required minimum wage after such expenses are counted against the hourly wages. Defendant systematically under-reimbursed its drivers for

vehicular wear and tear, gas, tolls, airport fees, and other driving-related expenses, thereby ensuring that the majority of Defendant's drivers are effectively paid well below the minimum wage.

19. At all times relevant hereto, Defendant has been an employer within the meaning of Section 3(d) of the FLSA.

20. At all times relevant herein, Defendant has been an enterprise within the meaningof Section 3(r) of the FLSA.

21. Defendant has had a gross volume of sales made or business done of at least $500,000 per annum.

22. Uber's Platform Access Agreement, section 12, contains an arbitration provision, requiring drivers to resolve disputes with Uber on an individual basis through final and binding arbitration. However, section 12 also provides that [drivers] "may choose to opt out of this arbitration provision by following the below instructions."

23. Section 12.8 of Uber's Platform Access Agreement provides, in pertinent part: "Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision (subject to the pending litigation provision in Section 12.2, and the limitations set forth in this Section 12.8). To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver account to optout-schleuder@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver account, and the city in which you reside."

24. In April, 2022 Mr. Aquino accepted Uber's Platform Access Agreement. On April 7, 2022, April 13, 2022, and April 20, 2022, Mr. Aquino sent Uber notice of his election to opt-out of Uber's arbitration agreement, as set forth under 15.2.8 of Uber's Technology Service Agreement, and/or section 12.8 "Your Right to Opt Out of this Arbitration Agreement".

25. Defendant issued paychecks to Plaintiff and all similarly situated employees during their employment.

26. Defendant directed the work of Plaintiff and similarly situated employees and benefitted from work performed that Defendant suffered or permitted from them.

27. Plaintiff and others similarly situated employees who opted out of Uber's arbitration agreement were not paid minimum wage for all hours worked, and Plaintiff and others similarly situated worked in excess of 40 hours per work week without receiving overtime compensation, as required by the FSLA, NYLL and other applicable local, state and federal wage and hour laws.

### **Uber Has Misclassified Its Drivers as Independent Contractors**

28. Defendant has tried to shield itself from liability for its blatant minimum wage violations by misclassifying its drivers as independent contractors. Uber drivers, however, are employees. They are required to follow a litany of detailed requirements imposed on them by Uber and they are graded, and subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, their ability to reject rides, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.). Uber thus supervises the performance of drivers' work according to criteria set by Uber.

29.     Uber controls the hours and locations worked by the drivers via the Uber Driver App. Uber will automatically log out the driver from the Driver App after 12 hours of work, thus making it impossible to work thereafter for at least eight hours. Uber also has the ability to deactivate its Driver App at any time, thus making it impossible for the driver to work while it is deactivated. For instance, when a New Jersey Uber driver enters New York, Defendant shuts off the Driver App, thus making it impossible for the New Jersey Uber driver to obtain a return fare back to New Jersey.

30.     Uber states in its Platform Access Agreement, effective on or about March 15, 2021, that it "may temporarily deactivate [a driver's] account without notice to investigate whether [a driver] [has] engaged in…activity that is…harmful to our brand, business or reputation, or that violates this Agreement…"  Uber also advises it "may terminate this Agreement or permanently deactivate [driver's] account without notice if [Uber] determine[s] in [its] discretion that a Material Breach or Violation has occurred." Uber also states in its Platform Access Agreement that drivers "can find out more about Ratings and how they may affect [driver's] ability to access [Uber's] Platform by vising [Uber's] website."

31.     Previously, in its Technology Services Agreement,[1] Uber stated that it "retains the right to deactivate or otherwise restrict you [driver] from accessing or using the Driver App or the Uber Services in the event of a violation or alleged violation of this Agreement, your disparagement of Company or any of its Affiliates, your act or omission that causes harm to Company's or its Affiliates' brands, reputation or business as determined by Company in its sole discretion." Uber also states in the Technology Services Agreement that, "[i]n order to continue to receive access to the Driver App and the Uber Services, you [driver] must maintain

---

[1] On or about March 15, 2021, Uber replaced the term "Technology Services Agreement" with "Platform Access Agreement" as the title for its employment agreement between itself and drivers.

7

an average rating by Users that exceeds the minimum average acceptable rating established by Company for your Territory, as may be updated from time to time by Company in its sole discretion ("Minimum Average Rating")." Uber further "reserves the right, at any time in Company's sole discretion, to deactivate or otherwise restrict you [driver] from accessing or using the Driver App or the UberServices if you [driver] fail to meet the requirements set forth in the [Technology Services] Agreement."

32. Uber requires its drivers to use electronic mobile devices, such as cell phones, to access the Driver App. Uber encourages its drivers to use their own mobile devices in order to provide transportation services and does not reimburse drivers for the cost and maintenance of the driver's mobile device and the necessary wireless data plan. If a driver elects to use an Uber provided electronic mobile device, the driver is required to reimburse Uber for the costs associated with the wireless data plan of each such device and/or a deposit for each device.

33. Uber controls the method of pay for the drivers and sets the fare for each ride. Uber prohibits drivers from setting rates of pay for their services; rather, their rates are determined by Uber. Uber "reserves the right to change the Fare Calculation at any time in the Company's discretion based upon local market factors." Uber, moreover, reserves the right to adjust the fare for a particular instance of transportation services if the driver takes an inefficient route, *i.e.*, a route different than the one provided by Uber on the Driver App.

34. Uber controls the work and directs the manner in which the drivers perform their work. Via the Uber Driver App, Uber provides its drivers with the only instrumentality by which a driver can perform services for Uber. Uber issues each of its drivers a Driver ID. The Driver ID enables the driver to access and use the Driver App on a mobile electronic device or cell phone. In its Technology Services Agreement, Uber informs drivers that it "reserves the

right to deactivate your Driver ID if you have not fulfilled a request for Transportation Services using the Driver App at least once a month." Through the Driver App, Uber sets the passenger pick up location. Uber only provides the driver with the location of the passenger for pick up, and does not disclose the destination of the passenger, until the pickup has been made. If the Uber driver declines the ride once the destination is provided, the driver is given a negative rating and potential deactivation of the driver's Uber account.

35.  Uber tracks each driver's location on the Driver App and recommends that the driver follow the route provided on the Driver App. If the driver does not follow the route provided by Uber on the Driver App, the driver's fare will be reduced if the alternate route takes longer.

36.  Uber thus maintains control, oversight, and discretion over its operations, including the work of Plaintiff and similarly situated drivers.

37.  Uber may terminate drivers at any time and may "deactivate [the] Driver ID immediately, without notice," if drivers "no longer qualify, under applicable law or the standardsand policies of Company and its Affiliates, to provide Transportation Services or to operate the Vehicle" or as otherwise set forth in the Technology Services Agreement, and/or Platform Access Agreement.

38.  Uber is in the business of providing transportation servicers to passengers, and that is the service that Plaintiff and the other Uber drivers provide. The drivers' servicers are fully integrated into Uber's business, and without the drivers, Uber would not exist.

39.  Plaintiff, the Collective Action Members, and the New York Class Members, performed their work in the normal course of Uber's business and their work was integrated into Uber's business.

40.     Defendant's improper and illegal, company-wide policy, pattern and/or practice of mischaracterizing Defendant's labor force as "independent contractors" improperly reduced Defendant's labor cost, thereby fraudulently increasing the appearance of Defendant's profitability.

41.     Defendant's company-wide policy, patterns and/or practice of misclassifying its employees as independent contractors was knowing and intentional.

42.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant misclassified Plaintiff and other similarly situated current and former employees, as independent contractors exempt from coverage of the minimum wage and overtime provisions of the FLSA, the NYLL, and other local and state wage and hour laws.

**Uber Fails to Reimburse Its Drivers For Work-Related Expenses Required by Uber**

43.     Throughout the relevant time period, Uber has required its driver to maintain and provide a safe, clean, functioning, insured and legally-operable automobile to make deliveries. Uber has also required its drivers to bear the "out-of-pocket" costs associated with their vehicles, including vehicle maintenance and repairs, insurance, and gas.

44.     Upon information and belief, Uber represents to its employees that it will reimburse them for business expenses they incur in connection with their employment with Uber. Uber communicates its business expense reimbursement policy through a published company manual, published policies and through its conduct in reimbursing such expenses.

45.     Uber failed to reimburse Plaintiff and similarly situated Uber drivers for business expenses incurred in the course of their work for Lyft, including, but not limited to, vehicle maintenance and repairs, insurance and gasoline, in violation of the terms of its business expense reimbursement policy.

46. The Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes. In 2019, the IRS rate was $0.58 per mile. In 2020, the IRS rate was $0.57.5 per mile. In 2021, the IRS rate was $0.56 per mile. As of January 1, 2022, the IRS rate is $0.58.5 per mile.

47. Thus, during the relevant period, the actual "out-of-pocket" costs that Uber's drivers paid to provide a safe, functioning, insured and legally-operable automobile was a minimum of $0.56 per mile and a maximum of $0.58.5 per mile.

48. Plaintiff and other Uber drivers were paid per ride at rates above the hourly minimum wage. However, the rate per ride was not sufficient to offset Plaintiff and other Uber drivers' actual "out-of-pocket" costs incurred and thus netted out to be less than minimum wage for all hours on the job. For example, it costs Plaintiff $119 for vehicle rideshare insurance coverage alone per month, and an additional $100 for maintenance, whereas his total earnings over the course of one month were less than $50. Thus, Plaintiff's net pay is below New York 2022 minimum wage of $13.20 per hour.

49. As a result, Uber has underpaid Plaintiff and its other drivers and fails to pay minimum wage for all hours worked after deduction of the work-related expenses.

50. Plaintiff, the Collective Action Members, and the New York Class Members also worked in excess of 40 hours per work week without being paid overtime wages in violation of the FLSA, NYLL and other local and state wage and hour laws.

51. The number of hours Plaintiff and other members of the Class worked per week can be ascertained from Defendant's records, including the trip logs maintained on the Uber app.

52. Defendant, via the Uber Driver App, assigned all of the work that Plaintiff, the Collective Action Members and New York Class Members have performed, and Defendant is aware of all of the work that they have performed.

## FLSA COLLECTIVE ACTION ALLEGATIONS

53. Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute his FLSA claim as a Collective Action on behalf of all individuals who during the relevant time period are or were Uber drivers in the United States classified as "independent contractors" and who opted out of Uber's arbitration agreement.

54. Defendant is liable under the FLSA for, inter alia, failing to pay proper minimum wage and overtime wages and failing to reimburse business expenses to Plaintiff and other similarly situated employees.

55. There are many similarly situated current and former Uber drivers who opted out of Uber's arbitration agreements and who have not been paid proper minimum wages and overtime wages, have not been reimbursed their business expenses in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the Collective pursuant to 29 U.S.C. § 216(b).

56. The similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## NEW YORK CLASS ALLEGATIONS

57. Plaintiff Anthony Aquino sues on his own behalf and on behalf of the New York Class, pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), defined as all current and former Uber drivers in the state of New York who during the relevant time period are or were classified

as

58. "independent contractors" and who opted out of Uber's arbitration agreement. Defendant violated the NYLL and the regulations promulgated thereunder by failing to pay proper minimum and overtime wages to Plaintiff Aquino and other putative New York Class Members and failing to reimburse their business expenses.

59. The New York Class is so numerous that joinder of all members is impracticable.

60. Although the precise number of such persons is unknown, these similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

61. Upon information and belief, there are more than 1,250 members of the New York Class. Indeed, there were at least 25,000 Uber drivers in New York City alone as of 2015, and the number of daily app-based rides nearly quadrupled to 160 million trips between 2015 and 2017. See https://static1.squarespace.com/static/53ee4f0be4b015b9c3690d84/t/5b3a3aaa0e2e72ca7407914 2/1530542764109/Parrott-Reich+NYC+App+Drivers+TLC+Jul+2018jul1.pdf

62. There are questions of law and fact common to the members of the New York Class that predominate over any questions solely affecting the individual members of the New York Class.

63. The critical question of law and fact common to Plaintiff Aquino and the New York Class that will materially advance the litigation is whether Defendant is required by the NYLL to pay Plaintiff Aquino and the New York Class minimum wage and overtime wages at a rate of 1.5 times their regular hourly rate for hours worked in excess of forty (40) hours per

week.

64. Other questions of law and fact common to the New York Class that will materially advance the litigation include, without limitation:

    a. Whether Defendant employed Plaintiff Aquino and the New York Class Members within the meaning of NYLL;

    b. The nature and extent of the class-wide injury and the appropriate measure of damages for the Class;

    c. Whether Defendant failed to pay Plaintiff Aquino and the New York Class the legally required minimum wage for hours worked in excess of 40 hours per workweek, in violation of the NYLL;

    d. Whether Defendant failed to reimburse Plainiff Acquino and the New York Class for necessary business expenses, in violation of the NYLL;

    e. Whether Defendant is liable for all damage claimed by Plaintiff Aquino and the New York Class, including, without limitation, compensatory and statutory damages, interest, costs and disbursements, and attorneys' fees.

65. Plaintiff Aquino's claims are typical of the claims of the members of the New York Class.

66. Plaintiff Aquino has the same interests in this matter as all other members of the New York Class.

67. Plaintiff Aquino is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in wage and hour law and class action litigation.

68. Class certification of Plaintiff Aquino's NYLL claim is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the New York Class, making appropriate both declaratory and injunctive relief with respect to the New York Class as a whole. The members of the New York Class are entitled to injunctive relief to end Uber's common and uniform policy, pattern and/or practice of

denying New York Class Members the wages to which they are entitled.

69. Class certification of Plaintiff's NYLL claim is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over questions affecting only individual members of the New York Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

70. Plaintiff Aquino knows of no difficulty that would be encountered in the management of this ligation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
**FAIR LABOR STANDARDS ACT: UNPAID MINIMUM WAGE, UNPAID OVERTIME WAGES AND UNREIMBURSED BUSINESS EXPENSES**
(Brought on Behalf of Plaintiff and All Collective Action Members)

71. Plaintiff, on behalf of himself and all Collective Action Members, repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if they were set forth herein at length.

72. At all relevant times, Defendant has been, and continues to be, an employer within the meaning of FLSA.

73. Defendant employs Plaintiff, and employed and/or continues to employ, each of the Collective Action Members, within the meaning of FLSA.

74. Defendant has and continues to engage in a policy, pattern and/or practice of violating the FLSA, as detailed in this Complaint.

75. Plaintiff has consented in writing to be party to this action, pursuant to 29 U.S.C. § 216(b).

76. The minimum wage and overtime wage provisions set forth in 29 U.S.C. §§ 201, et seq., apply to Defendant.

77. At all relevant times and continuing to the present time, Defendant had a policy pattern and/or practice of failing to pay minimum wage and overtime compensation to its employee drivers misclassified as independent contractors.

78. As a result of Defendant's willful failure to compensate its employees, including Plaintiff and the Collective Action Members, at minimum wage, and its willful failure to compensate Plaintiff and the Collective Members at a rate not less than one and one- half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including  29 U.S.C. § § 207(a)(1) and 215(a).

79. As a result of Defendant's FSLA violations, Plaintiff, on behalf of himself, and the Collective Action Members, are entitled (a) to recover from Defendant their unpaid wages for all of the hours worked by them at minimum wage and at one and a half times the regular rate of pay as overtime compensation for all hours worked in excess of 40 hours per week, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

80. Because Defendant's violation of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## SECOND CAUSE OF ACTION

**NEW YORK LABOR LAW: UNPAID MINIMUM WAGES, UNPAID OVERTIME WAGES; AND UNREIMBURSED BUSINESS EXPENSES**
**(Brought on Behalf of Plaintiff and All New York Class Members)**

81. Plaintiff Aquino repeats, reiterates and realleges each and every allegation of the preceding paragraphs, as if they were set forth herein.

82. At all relevant times, Plaintiff Aquino and the New York Class Members were

employed by Defendant within the meaning of the NYLL, and Defendant was an employer within the meaning of NYLL.

83. The minimum wage provision of the NYLL and its supporting regulations apply to Defendant.

84. Defendant willfully violated Plaintiff Aquino's rights and the rights of the New York Class Members by failing to pay them the legally required amount of minimum wage compensation, and overtime compensation at rates not less than one and one-half times their regular rate of pay for all hours worked by them in excess of 40 hours in a workweek, in violation of the NYLL and its regulations, and failing to reimburse their business expenses pursuant to Defendant's company policy.

85. Defendant knew and/or showed reckless disregard that its conduct was prohibited by the NYLL.

86. As a result of Defendant's willful violations of the NYLL, Plaintiff Aquino and the New York Class Members are entitled to recover from Defendant their unpaid wages and unreimbursed business expenses, reasonable attorneys' fees and costs of the action and pre-judgment and post-judgment interest, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to NYLL Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, the Collective Action Members, and the New York Class Members are entitled to and pray for the following relief:

a) Designation of this action as an FLSA collective action on behalf of Plaintiff and the Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C.

   §216(b) to all similarly situated members of the Collective Action Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claimsin this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b) Certification of the New York Class as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiff and his counsel to represent the members of the New York Class;

c) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

d) An injunction requiring Defendant to cease its unlawful practices under the NYLL and to comply with the law;

e) An award of unpaid wages at minimum wage after payment of work-related out-of-pocket expenses, and for all hours worked in excess of 40 in a workweek at a rate of one and one-half the regular rate of pay under the FLSA and the NYLL;

f) An award of unreimbursed business expenses under company policy and the NYLL;

g) An award of liquated damages pursuant to 20 U.S.C. § 216;

h) An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

i) An award of prejudgment and post-judgment interest;

j) An award of costs and expenses of this action together with reasonable attorneys' fees; and

k) Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: May 23, 2022

            **GISKAN SOLOTAROFF & ANDERSON LLP**
            By: */s/ Catherine E. Anderson*
            Catherine E. Anderson, Esq.
            90 Broad Street, 2nd Floor
            New York, NY 10004
            Tel: (212) 847-8315
            *canderson@gslawny.com*

Roosevelt N. Nesmith, Esq.
**LAW OFFICE OF**
**ROOSEVELT N. NESMITH LLC**
363 Bloomfield Avenue, Suite 2C Montclair, New Jersey 07042 Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

Russell S. Warren, Jr.
**LAW OFFICES**
**OF RUSSELL S. WARREN, JR.**
473 Sylvan Avenue Englewood Cliffs, NJ 07632
Tel. (201) 503-0773
Fax: (201) 503-0776
*mail@rwarrenlaw.com*

**THE MARKHAM LAW FIRM**
David R. Markham, Esq. *dmarkham@markham-law.com* 888 Prospect St., Suite 200
La Jolla, California 92037 Tel: (619) 399-3995
Fax: (619) 615-2067

*Attorneys for Plaintiff and the Putative Collective and Class*