UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY AQUINO, individually and on behalf of others similarly situated,<br><br>        **Plaintiffs,**<br> -against-<br><br>UBER TECHNOLOGIES, INC., RASIER, LLC and SCHLEUDER, LLC,<br><br>        **Defendants.** | Case No. 1:22-cv-04267-JLR |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

---

By: Andrew M. Spurchise
   Joshua C. Vaughn
   Thelma Akpan
   LITTLER MENDELSON, P.C.
   900 Third Avenue
   New York, New York 10022
   Tel: 212.583.9600

   *Attorneys for Defendants*
   *Uber Technologies, Inc., Rasier,*
   *LLC, and Schleuder, LLC*

# TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ........................................................... 1

II.   PROCEDURAL HISTORY & SUMMARY OF CLAIMS.............................. 3

III.  PLAINTIFF'S FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A
CLAIM UNDER RULE 12(B)(6) ....................................................... 4

    A.     Plaintiff Alleges Generalized Facts Related To Hypothetical "Drivers"
Untethered To His Experience And Thereby Fails To Sufficiently Plead
An Employment Relationship................................................. 5

    B.     Plaintiff Fails To Plead Facts Sufficient To State FLSA (First Cause of
Action) Or NYLL (Second Cause of Action) Minimum Wage Violations. .......... 9

    C.     Plaintiff Fails To State A Minimum Wage Claim Based On Unreimbursed
Business Expenses. ........................................................ 13

    D.     Plaintiff Fails To Plead Facts To Plausibly Demonstrate A Willful
Violation–Any Claim For FLSA Damages More Than Two Years Prior To
The FAC Should Be Dismissed. ............................................. 13

IV.  THIS COURT LACKS PERSONAL JURISDICTION OVER OUT-OF-STATE
PLAINTIFFS AND CLAIMS............................................................ 20

    A.     Defendants Are Not Subject To New York's General Jurisdicition Statute
As It Pertains To Out-Of-State Opt-In Plaintiffs. ................................ 22

    B.     There is No Specific Jurisdiction For Claims Arising Outside Of New
York. .................................................................... 22

V.    THE COURT SHOULD DENY PLAINTIFF ANY OPPORTUNITY TO
AMEND THE FAC ...................................................................... 25

VI.  CONCLUSION........................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armour & Co. v. Wantock,*
    323 U.S. 126 (1944)..................................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................4, 18, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................4, 18

*Bethel v. BlueMercury, Inc.,*
    No. 21 CIV. 2743 (KPF), 2022 WL 3594575 (S.D.N.Y. Aug. 22, 2022) ........................23, 24

*Bhanti v. Brookhaven Memorial Hosp. Medical Center,*
    260 A.D.2d 334 (2d Dept. 1999) ..........................................................6

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.,*
    137 S.Ct. 1773 (2017)...............................................................22, 23, 24

*Brown v. Lockheed Martin Grp.,*
    814 F.3d 619 (2d Cir. 2016).................................................................22

*Bynog v. Cipriani Grp., Inc.,*
    1 N.Y.3d 193 (N.Y. 2003) ...................................................................6

*Calabrese, et al. v. Uber Technologies, Inc., et al.,*
    19-cv-18371 (D.N.J.) ........................................................................3, 19

*Canaday v. Anthem Cos.,*
    9 F.4th 392 (6th Cir. 2021) ................................................................23

*Carter v. Rasier-CA, LLC,*
    No. 17-CV-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017), *aff'd,*
    724 F. App'x 586 (9th Cir. 2018) ....................................................9, 12

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2nd Cir. 2002)................................................................8

*Colson v. Avnet, Inc.,*
    687 F. Supp. 2d 914 (D. Ariz. 2010) ...................................................19

*Cuoco v. Moritsugu,*
    222 F.3d 99 (2d Cir. 2000)..................................................................25

*DeJesus v. HF Mgmt. Servs., LLC,*
    726 F.3d 85 (2d Cir. 2013)................................................................12

*Del Rio v. Uber Techs., Inc.,*
    No. 15-cv-03667-EMC, 2016 WL 10837864 (N.D. Cal. Mar. 28, 2016) ..............12

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,*
    691 F.3d 134 (2d Cir. 2012)................................................................11

*Eades v. Kennedy, PC Law Offices,*
    799 F.3d 161 (2d Cir. 2015)................................................................21

*Ellis v. Chao,*
    336 F.3d 114 (2d Cir. 2003)................................................................25

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
    40 F.4th 56 (2d Cir. 2022)................................................................21

*Fischer v. Federal Express Corp.,*
    42 F.4th 366 (3d Cir. 2022) ..............................................................23

*Guan Ming Lin v. Benihana National Corp.,*
    755 F. Supp. 2d 504 (S.D.N.Y. 2010)....................................................13

*Gustafson v Bell Atl. Corp.,*
    171 F. Supp. 2d 311 (S.D.N.Y. 2001)..............................................18, 19

*Harsco Corp. v. Segui,*
    91 F.3d 337 (2d Cir. 1996)................................................................17

*Hart v. Rick's Cabaret Int'l, Inc.,*
    967 F. Supp. 2d 901 (S.D.N.Y. 2013)....................................................6

*Hassell v. Uber Techs., Inc.,*
    No. 20-CV-04062-PJH, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020)........... *passim*

*Heroux v. Ingrassio,*
    612 F. Supp. 2d 236 (W.D.N.Y. 2009) ................................................13

*Karupaiyan v. CVS Health Corp.,*
    No. 19 CIV. 8814 (KPF), 2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021)...........10

*Lee v. Postmates Inc.,*
    No. 18-CV-03421-JCS, 2018 WL 6605659 (N.D. Cal. Dec. 17, 2018)................9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    673 F.3d 50 (2d Cir. 2012)................................................................21

*Lopez–Serrano v. Rockmore*,
   132 F.Supp.3d 390 (E.D.N.Y. 2015) ...................................................................10

*Lundy v. Catholic Health System of Long Island*,
   711 F.3d 106 (2d Cir. 2013)...............................................................................9

*Marshall v. UBS Fin. Servs., Inc.*,
   No. 14 CV. 4384, 2015 WL 4095232 (S.D.N.Y. July 7, 2015)...........................17

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013).............................................................................21

*Matson v. Board of Educ. of the City Sch. Dist. of N.Y.*,
   631 F.3d 57 (2d Cir. 2011)...............................................................................4

*New York Taxi Workers Alliance v. Uber Techs., Inc.*,
   No. 16-cv-4098 (AKH), 2017 WL 10402923 (S.D.N.Y. Apr. 7, 2017) ................19

*Nicholas v. Uber Techs., Inc.*,
   No. 19-CV-08228-PJH, 2020 WL 4039382 (N.D. Cal. July 17, 2020)................16

*Oliver v. Rio Acquisition Partners, LLC*,
   No. 18-cv-1794-GHW, 2019 WL 801952 (S.D.N.Y. Feb. 21, 2019)....................12

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997)...........................................................................21

*Perez Perez v. Escobar Constr., Inc.*,
   540 F. Supp. 3d 395 (S.D.N.Y. 2021)............................................................23, 24

*Pettenato v. Beacon Health Options, Inc.*,
   425 F. Supp. 3d 264 (S.D.N.Y. 2019)................................................20, 21, 23, 24

*Rowlett v. Michigan Bell*,
   No. 11–cv–1269, 2013 WL 308881 (W.D. Mich. Oct. 4, 2012) ...........................20

*Ruston v. Town Bd. for the Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010)................................................................................4

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947).......................................................................................6

*Saleem v. Corp. Trans. Group, Ltd.*,
   854 F.3d 131 (2d Cir. 2017).......................................................................5, 6, 8

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)........................................................................................11

*Vallone v. CJS Sols. Grp., LLC,*
    9 F.4th 861 (8th Cir. 2021) .................................................................................23

*Waters v. Day & Zimmermann NPS, Inc.,*
    23 F.4th 84 (1st Cir. 2022) ..................................................................................23

*Weiss v. Nat'l Westminster Bank PLC,*
    176 F. Supp. 3d 264 (E.D.N.Y. 2016) ................................................................22

*Whiteside v. Hover-Davis, Inc.,*
    995 F.3d 315 (2d Cir. 2021) ..........................................................17, 18, 19, 20

*Yucesoy v. Uber Techs., Inc.,*
    No. 15-cv-00262-EMC, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016) ....................12

**Statutes**

California Labor Code § 2802 ....................................................................................13

Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* ............................................ *passim*

New York Labor Law, Article 6, §§ 190, *et seq.* and Article 19, §§ 650, *et seq.* ................ *passim*

Portal-to-Portal Act, 29 U.S.C. §§ 251, *et seq.* ....................................................10, 18

**Other Authorities**

29 C.F.R. § 531.35 ................................................................................................13, 16

Fed. R. Civ. P. 12(b)(2) and (6) ................................................................................2, 4

Fed. R. Civ. P. 15(a) ....................................................................................................25

Fed. R. Civ. P. 23 ........................................................................................................3, 4

N.Y. C.P.L.R. §§ 301 302(a)(1) ................................................................................22

NYDOL Opinion Letter, File No. RO-08-0066 (June 20, 2008) ................................13

U.S. Department of Labor WHD Opinion Letter, FLSA2019-6 (April 29, 2019) ........20

## I.    PRELIMINARY STATEMENT

After Defendants Uber Technologies, Inc. ("Uber"), Rasier, LLC, and Schleuder, LLC (collectively, "Defendants") moved to dismiss Plaintiff Anthony Aquino's ("Plaintiff") initial Complaint, Plaintiff filed an amended pleading, dropping his overtime claim and adding three paragraphs of factual averments related to three days that he provided transportation services using Uber's Driver App. Plaintiff's sparse additional factual allegations are insufficient to cure the deficiencies in his case.

Plaintiff's remaining claim, based on his limited experience, is that he and other drivers were misclassified as independent contractors and therefore not paid minimum wages. Specifically, he admits that he and other drivers were paid at least minimum wage for all hours worked, but alleges that the expenses he incurred – when subtracted from his total earnings – caused his hourly rate to drop below minimum wage in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

To adequately plead a minimum wage claim, however, Plaintiff is required to supply sufficient facts (i) that could plausibly support the conclusion that, under the applicable legal test, he had an employment relationship with Defendants; and (ii) that a simple arithmetical calculation can determine the amount allegedly owed for the pay periods in which the violations were allegedly suffered. Plaintiff continues to offer no such facts.

Specifically, he has entirely failed to plead facts to plausibly show (i) *he* had an employment relationship with Defendants, (ii) that the expenses he incurred were required by Defendants, and (iii) a single workweek in which his expenses attributable to that workweek and to providing transportation services (as opposed to using his vehicle for personal or unrelated business endeavors) caused his wages to drop below minimum wage based on hours allegedly worked. Plaintiff also failed to plead any facts demonstrating that Defendants acted willfully with

1

regards to his classification such that a three-year statute of limitations should apply to his FLSA claim.

With respect to his minimum wage claims, Plaintiff alleges that on a single day he drove passengers for a total of 20 minutes and made $19.25, well above either the federal or state minimum wage. Though Plaintiff alleges he spent additional time commuting or on Uber's Driver App waiting for a trip request, Plaintiff does not explain how this additional time can plausibly be considered compensable time for which he must be paid the minimum wage.

Plaintiff also offers that he was paid a total of $46.88 for his services on three days, and he incurred $219 *per month* in expenses. However, he makes no attempt to apportion his vehicle use between personal and business purposes or specifically tying any of his expenses to the services he actually provided on Uber's Driver App, and instead offers mere legal conclusions, generalities, and non sequiturs. In other words, Plaintiff has entirely failed to plead facts sufficient to state any claim for relief.

Even if Plaintiff's claims survive the instant motion to dismiss, which they should not, Plaintiff's putative FLSA collective allegations must be dismissed to the extent Plaintiff seeks to bring this suit on behalf of individuals who provided services as independent transportation providers ("drivers") outside of New York State. This Court lacks personal jurisdiction over claims brought by out-of-state plaintiffs against out-of-state defendants when the alleged conduct and injuries occurred outside the state.

Therefore, and for the reasons set forth more fully below, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), the Court should dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice.

## II.    PROCEDURAL HISTORY & SUMMARY OF CLAIMS

Plaintiff signed up to drive using Uber's Driver App as a driver on April 1, 2022. Within days after signing up, Plaintiff submitted several requests to opt-out of arbitration. Plaintiff's FAC states that he drove passengers for 20 minutes on April 7, 2022, for which he was paid $19.25. (Dkt. 28, FAC at ¶25.)  He states that he also logged on to Uber's Driver App on April 13 and 19, 2022, and was paid $10.31 and $17.32 respectively on those dates. (*Id.*, ¶¶26-27.) Unlike Plaintiff's allegations for April 7, 2022, he does not, however, state that he performed any transportation services on those dates or how long he performed those services. (*Id.*) Instead, he notes merely that he commuted to a chosen waiting point and was logged on to Uber's Driver App for certain periods of time. (*Id.*)

On May 24, 2022, less than two months after signing up to use Uber's Driver App, Plaintiff filed his original Complaint. (Dkt. 1, Complaint at ¶ 10.) Plaintiff is represented by counsel who are currently pursuing similar litigation against Uber in the District of New Jersey. *See Calabrese, et al. v. Uber Technologies, Inc., et al.*, 19-cv-18371 (D.N.J.).[1]

On August 1, 2022, Defendants filed their Motion to Dismiss the Complaint (Dkts. 12 – 14). In response, on August 30, 2022, Plaintiff filed his FAC. In Plaintiff's FAC, he alleges that he was misclassified as an independent contractor, and asserts causes of action based on that alleged misclassification for violations of the: (i) FLSA, 29 U.S.C. §§201, *et seq.*; and (ii) NYLL, Article 6, §§ 190, *et seq.* and Article 19, §§ 650, *et seq.* Under both federal and state law, Plaintiff alleges that Defendants failed to pay minimum wages, including as a result of expenses Plaintiff

---

[1] Notably, the *Calabrese* court found that plaintiff was bound by an arbitration agreement, preventing the matter from proceeding as a putative FLSA collective action and Rule 23 class action. (Dkt. 88.)

incurred. Plaintiff seeks to represent himself, and a nationwide FLSA collective and Rule 23 New York class of drivers not bound by arbitration agreements. (*See generally* FAC.)

## III. PLAINTIFF'S FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the claims alleged. *See* Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Matson v. Board of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (to survive a motion to dismiss, a complaint requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation").

While the Court on a motion to dismiss must accept all factual allegations as true and draw all reasonable inferences in favor of Plaintiff, the same is not true of the legal conclusions derived from those factual allegations. *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010); *Iqbal*, 556 U.S. at 678. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Plaintiff's FAC suffers from the same deficiencies as his initial Complaint. Plaintiff offers "threadbare recitals" and conclusory statements—without plausible factual support—which do not establish a viable claim. Specifically, he has again failed to allege facts sufficient to support a

plausible conclusion that he had an employment relationship with Defendants, that Defendants failed to pay him minimum wages, or that Defendants violated the law willfully.

The lack of Plaintiff's factual averments related to his own experience and the implausibility of Plaintiff's legal allegations based on those averments, on their face, is explained (at least in part) by the unusually truncated timeline leading to the filing of this lawsuit. Plaintiff signed up as a driver in April 2022, opted out of arbitration a few days later, allegedly drove passengers for a grand total of 20 minutes on one day and an unknown amount of time on two other days, and then a little over a month later filed a civil suit represented by counsel currently pursuing similar litigation in a different District Court.  It is no surprise then that Plaintiff asserts only generalized "facts" untethered to his own personal experiences.

Plaintiff's FAC must therefore be dismissed.

### A.    Plaintiff Alleges Generalized Facts Related To Hypothetical "Drivers" Untethered To His Experience, And Thereby Fails To Sufficiently Plead An Employment Relationship.

A prerequisite for Plaintiff's minimum wage claims is that he had an employment relationship with Defendants. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title . . . shall be liable to the employee or employees affected . . . ."); Article 6, §§ 190, *et seq.* and Article 19, §§ 650, *et seq.*

When tasked with evaluating an individual's independent contractor status under the FLSA, courts apply the "economic realities" test. Under this test, the "ultimate concern … [is] whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Saleem v. Corp. Trans. Group, Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)).

Courts in the Second Circuit use several interdependent factors as aids to "elucidate the 'economic reality' of the arrangement at issue." *Saleem,* 854 F.3d at 139-40. Specifically, courts may consider: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Id*. at 140, n. 19 (quoting *Brock*, 840 F.2d at 1058-59). What matters under the first factor is the "*actual exercise of control*," not the mere right to control. *Saleem,* 854 F.3d at 149, n. 37 (emphasis supplied). In addition, the presence (or absence) of any one factor is not dispositive of employee status; such a determination depends "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947).

When conducting this analysis under the NYLL, courts also evaluate the degree of control exercised by the purported employer, as measured by a variety of factors, including whether the worker (i) worked at his own convenience, (ii) was free to engage in other employment, (iii) received fringe benefits, (iv) was on the employer's payroll and (v) was on a fixed schedule. *Bynog v. Cipriani Grp., Inc.,* 1 N.Y.3d 193, 198 (N.Y. 2003) (citing *Lazo v. Mak's Trading Co.*, 84 N.Y.2d 896, 897 (N.Y. 1994) (applying standard in tort context)); *Bhanti v. Brookhaven Memorial Hosp. Medical Center,* 260 A.D.2d 334, 335 (2d Dept. 1999)). These factors are not exhaustive, however, and New York courts often consider additional factors as well. *Hart v. Rick's Cabaret Int'l, Inc*., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (citing cases considering requirements to wear a uniform, employer's authority to decide the timing and selection of jobs, among other factors).

Plaintiff's only allegations regarding *his* employment status during the mere weeks he used Uber's Driver App are that "Defendant has been an employer within the meaning of Section 3(d) of the FLSA" (FAC, ¶19), and broad, conclusory averments about the way Defendants allegedly treat drivers generally. (*See e.g.*, *id.*, ¶31 ("they" are required to follow detailed requirements imposed on "them," "they" are graded based on "their" failures, Uber supervises the performance of "drivers' work"), ¶32 (Uber controls hours and locations worked by "drivers," a driver can be logged out, Uber can deactivate the "Driver App"), ¶¶ 33-34 (general references to Uber's Platform Access Agreement and Technology Services Agreement), ¶35 (Uber requires "drivers" to use mobile devices, encourages their use, and does not reimburse "drivers"), ¶37 (Uber controls method of pay and right to adjust fare – without any reference to Plaintiff's experience or that Uber has in fact exercised such control), ¶38 (Uber tracks "drivers" and may reduce a "driver's fare" for taking a longer alternate route), ¶40 (Uber may terminate or deactivate "drivers"), ¶46 (Uber required "drivers" to maintain safe and legally-operable automobiles), ¶49 (out-of-pocket costs "drivers paid" for vehicles was between $0.56 and $0.585 per mile)).

Plaintiff does not state, however, that he has *personally* experienced these facts or otherwise attempt to tie these facts back to his limited period of engagement. In fact, Plaintiff even cites to provisions contained in a contract—the Technology Services Agreement—that he never entered into or accepted. (FAC, ¶34.)[2] Facts allegedly experienced by others are insufficient to show Plaintiff's plausible entitlement to relief. *Hassell v. Uber Techs., Inc.*, No. 20-CV-04062-PJH, 2020 WL 7173218, at *6 (N.D. Cal. Dec. 7, 2020) (citing plaintiff's identification of hours

---

[2] Plaintiff states in his FAC that the term Technology Services Agreement was replaced with Platform Access Agreement on or about March 15, 2021, which was more than one year *before* Plaintiff signed up in April 2022. It is unclear how Plaintiff would have any first-hand knowledge about this information or contract. Such discrepancies underscore the unreliability of Plaintiff's factual averments and implausibility of his claims.

worked and scope of tasks performed by drivers *generally* and not plaintiff *specifically* as one of numerous reasons why overtime claim failed).

Plaintiff does repeatedly refer to Uber's Platform Access Agreement ("PAA") throughout his Complaint, which he did accept, in order to attempt to establish the existence of an employment relationship. (FAC, ¶¶ 22-24, 33.) However, the very document that he attempts to rely on makes clear that all drivers operate as independent business enterprises (§1.1), that all drivers may accept, decline or ignore ride requests within their discretion (§2.6(a)), and that drivers are not required to use, wear or display Uber's name or logo on their vehicle or clothing (§2.7(a)). (Declaration of Michael Chan ("Chan Decl."), Exhibit A.) Section 1.2 of the PAA explicitly states that Uber has no right to direct and control drivers, nor are drivers required to accept any minimum of rides in order to access the Uber platform. This section also provides that drivers are able to drive using any competing ridesharing platform, as well. (*Id.*)[3] It strains logic that Plaintiff could have entered into this contract, drove with Uber for limited amounts of time on three days, and concluded that the reality of his relationship was so inconsistent with the contract that he was misclassified as an independent contractor.

Under *Saleem*, Plaintiff must demonstrate the "actual exercise" of control by Defendants over *him* during his one-and-a-half months long contractual relationship predating his lawsuit. He has entirely failed to do so. Similarly, Plaintiff fails to identify a single factor that would constitute employment under the NYLL common law test.

---

[3] Defendants request that the Court consider the Platform Access Agreement attached as Exhibit A to the Chan Declaration without converting Defendants' motion to dismiss into one for summary judgment. A defendant may incorporate in its motion to dismiss documents that the plaintiff has incorporated by reference, even if not attached to his complaint, if "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam). Plaintiff repeatedly cites to the Platform Access Agreement in his FAC. (FAC, ¶¶ 22-24, 33.)

Plaintiff's ill-supported conclusory allegations deserve no weight, and his general averments about drivers fail to sufficiently allege that *he* experienced these facts or otherwise had an employment relationship with Defendants under either the economic realities test or the New York Labor Law test. *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 6605659, at *10 (N.D. Cal. Dec. 17, 2018), motion to certify appeal granted, No. 18-CV-03421-JCS, 2019 WL 1864442 (N.D. Cal. Apr. 25, 2019) ("This case must be viable as an individual action before it can be certified as a class action, and general allegations regarding 'couriers' do not substitute for allegations pertaining to [plaintiff] specifically…").

Accordingly, Plaintiff has failed to plead facts sufficient to plausibly suggest an employment relationship and his claims must be dismissed. *Tyler v. Uber Technologies*, Inc. 487 F. Supp. 3d 27 (D.D.C. September 17, 2020) ("[t]he complaint is devoid of allegations that Uber dictates the 'means and manner' of the driver's performance…Thus, plaintiff has not alleged sufficient facts to support a plausible claim that Uber was his employer"); *Carter v. Rasier-CA, LLC*, No. 17-CV-00003-HSG, 2017 WL 4098858, at *1 (N.D. Cal. Sept. 15, 2017), *aff'd,* 724 F. App'x 586 (9th Cir. 2018) (finding that plaintiff's minimal factual allegations to support his claim of an employment relationship was "insufficient, even at the motion to dismiss stage").

**B.    Plaintiff Fails To Plead Sufficient Facts To State FLSA (First Cause Of Action) Or NYLL (Second Cause Of Action) Minimum Wage Violations.**

In both counts of his FAC, Plaintiff argues that Defendants failed to pay him the legally required federal or state minimum wage.

To state a plausible cause of action for unpaid wages, Plaintiff must plead facts sufficient for this Court to draw a reasonable inference that he worked hours for which he did not receive the applicable minimum wage. 29 U.S.C. § 207(a)(1); *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 114-15 (2d Cir. 2013) (affirming dismissal of FLSA claim because plaintiffs' claims

were too speculative with respect to the time considered compensable). A plaintiff is required to supply sufficient facts such that "a simple arithmetical calculation can be used to determine the amount owed per pay period." *Lopez–Serrano v. Rockmore*, 132 F.Supp.3d 390, 402 (E.D.N.Y. 2015). Plaintiff must therefore identify with sufficient details at least one workweek in which his or her earnings did not meet or exceed the required minimum wage, which necessarily requires identifying how much the individual was paid in the workweek as well as the number of hours worked. Without this threshold information, Plaintiff does not plausibly state an FLSA or NYLL minimum wage claim.

As an initial matter, Plaintiff *admits* that he and other Uber drivers "were paid per ride *at rates above the hourly minimum wage*." (FAC, ¶ 51) (emphasis supplied). Plaintiff's admission on this point is enough to establish that he has failed to show a plausible entitlement to relief.

In addition, Plaintiff does not allege what he was paid or the hours he worked for *any* particular workweek. Instead, he merely avers that, over the course of three separate days in April 2022 (April 7, 13, and 19, 2022), he spent a total of 3.5 hours commuting to and from the location where he chose to offer his transportation services,[4] he turned on the Driver App on three occasions for a total of 3.8 hours, that he the "drove passengers for approximately 20 minutes," and that he was paid a total of $46.88. (FAC, ¶¶25-27). Plaintiff's own averments show that for the only

---

[4] Plaintiff's averments related to the amount of time that he spent driving to and from a "wait spot" in Westchester County is immaterial to his minimum wage claim. (FAC, ¶¶ 25-27). Even if such "wait spots" existed (which Uber disputes), and even if Plaintiff were to be considered an employee, any time spent traveling to or from the alleged wait spots are not compensable as a matter of law. 29 U.S.C. §254; *Karupaiyan v. CVS Health Corp.,* No. 19 CIV. 8814 (KPF), 2021 WL 4341132, at *30 (S.D.N.Y. Sept. 23, 2021) ("In relevant part, the Portal-to-Portal Act exempts employers from compensating employees under the FLSA for or on account of time spent traveling to and from the actual place of performance of the principal activity or activities of employment and any activities which are preliminary to or postliminary to said principal activity or activities.") (citing *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008))(internal quotation marks omitted).

compensable time he actually worked—20 minutes on April 7—he earned an hourly rate of $57.75 per hour.

Plaintiff makes no attempt to argue that his time "on app" while not driving passengers is compensable or to factually support that he was suffered or permitted to work during this time, nor can he. The Supreme Court has recognized that analogous "on-call" time is compensable only under limited circumstances. *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944). In determining whether such time constitutes "hours worked," the Supreme Court in *Skidmore* drew the distinction as to whether "the employee was engaged to wait," which is compensable, or if he "waited to be engaged," which is not compensable. *Skidmore*, 323 U.S. at 137. Likewise, in the Second Circuit, compensable on-duty waiting time is time worked *only* when a worker is not engaged in the work for which they were hired but remains subject to the direction of the employer and is not able to effectively use the time for themselves. *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,* 691 F.3d 134, 146 (2d Cir. 2012) ("We held that '[t]he general rule, however, is and always has been that the FLSA does not treat ordinary home-to-job-site travel as compensable… and the long-established conclusion that "periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked," (citing *Kuebel v. Black & Decker Inc.,* 643 F.3d 352 (2d Cir. 2011)), quoting 29 C.F.R. § 785.16(a)." Plaintiff does not allege he was at the direction of Uber while on the Driver App waiting for a trip request or that he was unable to use the time in between rides as he sought fit.

Courts have consistently dismissed FLSA and state minimum wage claims premised upon time simply logged into Uber's Driver App. *See, e.g., Hassell,* 2020 WL 7173218, at *5-6 (dismissing minimum wage claim based on failure to explain how time spent waiting could be

considered "hours worked"); *Carter*, 2017 WL 4098858 at \*3 (same); *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-00262-EMC, 2016 WL 493189, \*5-6 (N.D. Cal. Feb. 9, 2016) (dismissing, with prejudice, Plaintiff's minimum wage and overtime claims against Uber for failing to allege time spent connected to the Uber App was compensable); *Del Rio v. Uber Techs., Inc.,* No. 15-cv-03667-EMC, 2016 WL 10837864, at \*3-4 (N.D. Cal. Mar. 28, 2016) (dismissing FLSA claim for failure to pay overtime and minimum wages, as "Plaintiffs do not explain how they define 'work,' *i.e.* whether Plaintiffs contend that they [sic] drivers [sic] at work whenever the Uber app is on").[5]

Plaintiff's failure to aver specific facts related to the amount of time he spent actually working and how much he was paid for all hours worked during any workweek deprives this Court and Defendants from determining whether Plaintiff plausibly suffered any minimum wage violation. In fact, Plaintiff's averments establish the contrary—that he was paid at least the minimum wage for hours he actually worked.

Just as in *Hassell*, *Carter*, *Yucesoy*, and *Del Rio*, Plaintiff's factually unsupported minimum wage claims should therefore be dismissed. *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (affirming dismissal of FLSA overtime claim where Plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content."); *Oliver v. Rio Acquisition Partners, LLC¸* No. 18-cv-1794-GHW, 2019 WL 801952 (S.D.N.Y. Feb. 21, 2019) (dismissing an FLSA claim where the plaintiff "failed to allege or estimate how many hours she worked, how many hours were uncompensated, and her hourly wage" such that the court "has no plausible basis upon which it could conclude that Plaintiff was paid below the federally established minimum wage.").

---

[5] Even if Plaintiff were to argue that "on app" time should be compensable, and support the argument with factual averments, his existing averments show that he was paid $12.33 per hour, well above the federal minimum wage.

### C.   Plaintiff Fails To State A Minimum Wage Claim Based On Unreimbursed Business Expenses.[6]

Plaintiff also argues that he had to incur out-of-pocket expenses for vehicle maintenance, gas, tolls, airport fees, and insurance, which caused his earnings to drop below minimum wage (FAC, ¶¶ 11, 18), but Plaintiff fails to even attempt to show that the alleged expenses he incurred were specifically required by Defendants for the performance of his driving services using the Driver App.

To state a minimum wage violation based on unreimbursed business expenses, an individual must show that their gross wages fell below minimum wage after required expenses are deducted and hours worked are taken into consideration. *Guan Ming Lin v. Benihana National Corp.*, 755 F. Supp. 2d 504, 511-12 (S.D.N.Y. 2010) ("employers can require employees to bear the costs of acquiring and maintaining tools of the trade so long as those costs, when deducted from the employees' weekly wages, do not reduce their wage to below the required minimum."). Where Plaintiff alleges that he is required to provide the tools of the trade, he must plead sufficient facts to plausibly show that the tools were "a requirement of the employer" that "will be used in or are specifically required for the performance of the employer's particular work." 29 C.F.R. § 531.35 (explaining that "*if it is a requirement of the employer* that the employee must provide tools of the trade which *will be used in or are specifically required for* the performance of the employer's

---

[6] Though it is unclear from Plaintiff's FAC whether he is attempting to allege a stand-alone business expense reimbursement claim, no such claim exists under federal or New York State law. Unlike other jurisdictions (*see, e.g.,* California Labor Code § 2802 ("An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties")), nothing in the FLSA or New York law requires employers to reimburse employees for business related expenses. *See, e.g.,* NYDOL Opinion Letter, File No. RO-08-0066 (June 20, 2008) ("you correctly assert that 'there is no law in New York that *requires* employers to pay or reimburse employees for business related expenses'") (emphasis in original); *Heroux v. Ingrassio*, 612 F. Supp. 2d 236, 240 (W.D.N.Y. 2009) (dismissing claim and noting that "[n]either Federal nor New York statutory law requires an employer to reimburse its employees for mileage").

particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." (emphasis supplied)). Plaintiff has not done so.

Plaintiff only generally describes that he incurred $119 for insurance and $100 in "vehicle maintenance." However, Plaintiff fails to indicate that Defendants required him to incur these expenses,[7] when the $119 and $100 were incurred, how much is attributable to any specific workweek, how much of these expenses were attributable to his personal vehicle use (that logically account for the vast majority of his monthly vehicle use, given how little time he spent driving passengers) and how much for the nominal amounts of time he spent providing transportation services (which his FAC identifies as only 20 minutes), what his earnings were in weeks in which the expenses were incurred, and what he actually earned in a particular workweek on an hourly basis after accounting for expenses.

On its face, it is implausible that Plaintiff spent $100 on "vehicle maintenance" costs as a result of driving passengers for 20 minutes. It is also implausible to attribute $119 in monthly insurance costs to work performed on Uber's Driver App, given that Plaintiff had to maintain insurance on his vehicle regardless of whether he used Uber's Driver App.

If Plaintiff used his vehicle for even two hours each day for personal or non-Uber business reasons in the month of April, that reflects 3,600 minutes of personal or other business use compared to 20 alleged minutes providing transportation services on the Driver App. Under this scenario, even when accepting all factual allegations as true and drawing all reasonable inferences

---

[7] The FAC confusingly references expenses incurred by drivers in connection with their work for Lyft, highlighting the fact that drivers can and often do work with multiple rideshare or delivery platform companies at the same time. (FAC, ¶ 48.)

in favor of Plaintiff, it is reasonable to infer that he only incurred $1.21 in business expenses[8] attributable to his provision of Uber-related transportation expenses (20 minutes of transportation time divided by total personal and business time – then multiplied by the alleged monthly business expenses). This amount clearly does not drop his earnings below the federal or state minimum wages.

In sum, Plaintiff's bald total of monthly expenses fail to create a sufficient connection to a requirement imposed *by Defendants* related to work *actually performed* while driving using Uber's Driver App.

*Hassell* is instructive on this point. In *Hassell*, the court found the plaintiff's complaint deficient where he,

> failed to allege that the expenses he incurred were *necessary to* or *in consequence of* his job duties. Aside from reciting the categories of expenses that class members generally incur when driving for defendant, his complaint lacks any details about *the nature or amount of expenses* he incurred *when completing the deliveries for defendant*. . . .
>
> While plaintiff attempts to dismiss these deficiencies as factual matters that may be reasonably inferred from the complaint, the court disagrees. *The above-referenced details are important to assess whether the subject expenses are reimbursable as necessary to and in consequence of his job duties.* For example, plaintiff alleges that drivers incur expenses for "maintaining their vehicles," "insurance," and "phone and data expenses for running the Uber Eats Application." Compl. ¶ 27. *These allegations do not provide any basis to infer that, independent of their use of the Uber Eats App, drivers would not maintain their vehicle, pay for insurance, or purchase a smart phone with a data plan.*

---

[8] Plaintiff also does not explain what is meant by "vehicle rideshare specific insurance," nor does he assert facts to support a reasonable conclusion that the alleged "vehicle rideshare specific insurance" was incurred for purposes of providing transportation services to Uber, as opposed, for example, to providing services for another ridesharing platform or for other business endeavors.

*Hassell*, 2020 WL 7173218 at *3 (emphasis supplied). Here, Plaintiff has likewise failed to plead facts to support the requisite conclusion that any expenses he incurred were necessary to and a consequence of his driving duties. He has also not alleged the unlikely fact that absent his use of Uber's Driver App, he would *not* maintain or pay insurance for his vehicle. To the extent Plaintiff uses his vehicle for both personal and business purposes, only the portion of his alleged expenses that were specifically required by Defendants and for the purpose of his driving services could conceivably reduce his earnings for purposes of determining whether a minimum wage violation occurred.

As in *Hassell*, these details are important to assess whether the claimed expenses may be deducted from his earnings for purposes of determining whether Plaintiff earned minimum wage. Given Plaintiff's admission that he "and other Uber drivers were paid per ride at rates above the hourly minimum wage" (FAC, ¶51), it is all the more important for him to plead these details. Without more, Plaintiff's allegations are insufficient as a matter of law to permit Defendants and this Court to calculate whether his hourly earnings for even a single workweek fell below the required minimum because of expenses he was allegedly required to and in fact incurred. *See* 29 C.F.R. § 531.35 (". . . there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.").

Plaintiff has therefore failed to nudge this claim across the line from the possible to the plausible, and his minimum wage claims should therefore be dismissed. *Nicholas v. Uber Techs., Inc.*, No. 19-CV-08228-PJH, 2020 WL 4039382 at *19 (N.D. Cal. July 17, 2020) (finding that the plaintiffs' minimum wage allegations were "insufficient to push the alleged violation from the realm of 'possible' to the 'plausible'", dismissing the claims); *Hassell,* 2020 WL 7173218 at *4

(plaintiff failed to allege an actionable claim for failure to reimburse, and absent a right to reimbursement for the expenses deducted, the court did not permit plaintiff to count such expenses toward his effective wage rate).[9]

### D.  Plaintiff Fails To Plead Facts To Plausibly Demonstrate A Willful Violation – Any Claim For FLSA Damages More Than Two Years Prior To The FAC.

Plaintiff alleges that his FLSA claim is entitled to a three-year statutory period because Defendants have willfully violated the FLSA by misclassifying him and others as independent contractors. (FAC, ¶¶79–81.) Willfulness is an independent element of claims for a violation of the FLSA. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 322 (2d Cir. 2021). To adequately state a claim for a willful violation of the FLSA, Plaintiff must plead *facts* that plausibly suggest that Defendants "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id*. at 324; *Marshall v. UBS Fin. Servs., Inc.*, No. 14 CV. 4384 (JGK), 2015 WL 4095232, at *4 (S.D.N.Y. July 7, 2015) (quoting *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir.1991) (internal quotation marks omitted). "Reckless disregard ... involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Whiteside*, 995 F.3d at 324 (citations omitted); *Young Clarke v. JPMorgan Chase Bank, N.A.*, No. 08-CV-2400 CM/DCF, 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010). A willful violation requires more than "mere negligence" or an ordinary violation. *Whiteside,* 995 F.3d at

---

[9] Plaintiff also states that Defendants' failure to reimburse him for expenses violates the terms of their business expense reimbursement policy. Plaintiff has not included a cause of action for breach of contract, nor alleged facts to support such a claim. For purposes of this Motion, Defendants state only that such a cause of action is also insufficiently pled and therefore should be dismissed. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996) (a breach of breach of contract claim must allege the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach).

324, *Gorey v. Manheim Servs. Corp.*, 788 F.Supp.2d 200, 209 (S.D.N.Y. 2011); *Ochoa v. Pearson Educ.*, Inc., No. 11-CV-1382 DMC-JAD, 2012 WL 95340, at *3 (D.N.J. Jan. 12, 2012)).

The mere allegation of willfulness is insufficient "to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage." *Whiteside,* 995 F.3d at 323 ("[a]n averment of 'willfulness' is thus *precisely* the sort of legal conclusion that *Twombly* and *Iqbal* counsel must be supported by factual allegations at the pleadings stage."). To satisfy pleading requirements in this regard, "the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation ...." *Gustafson v Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323-24 (S.D.N.Y. 2001).

Here, Plaintiff has failed to plead *any* facts regarding the alleged willful nature of Defendants' alleged violations, and instead asserts mere barebones legal conclusions that must be disregarded. (FAC, ¶¶ 44, 79, 81, 85-87.) With regards to willfulness, Plaintiff alleges in conclusory fashion that:

- "Defendant's company-wide policy, patterns and/or practice of misclassifying its employees as independent contractors was knowing and intentional." (*Id*., ¶44.)

- "As a result of Defendant's willful failure to compensate its employees, including Plaintiff and the Collective Action Members, at minimum wage, Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. § § 207(a)(1) and 215(a)." (*Id*., ¶79.)

- "Because Defendant's violation of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255." (*Id*., ¶81.)

- "Defendant willfully violated Plaintiff Aquino's rights and the rights of the New York Class Members by failing to pay them the legally required amount of minimum wage compensation, in violation of the NYLL and its regulations, and failing to reimburse their business expenses pursuant to Defendant's company policy." (*Id*., ¶85.)

- "Defendant knew and/or showed reckless disregard that its conduct was prohibited by the NYLL." (*Id*., ¶85.)

- "As a result of Defendant's willful violations of the NYLL, Plaintiff Aquino and the New York Class Members are entitled to recover from Defendant . . . ." (*Id.*, ¶87.)

These allegations are "formulaic recitations" of the legal standard, rather than facts showing that Uber "either knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA." *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). These mere conclusions cannot establish a plausible claim of a willful violation, and therefore his FLSA claim must be limited to a two-year statute of limitations. *See, e.g., Whiteside*, 995 F.3d at 324; *Gustafson v Bell Atl. Corp.*, 171 F Supp 2d 311, 323-24 (S.D.N.Y. 2001); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 921-22 (D. Ariz. 2010) (granting motion to dismiss allegation that defendant acted willfully where plaintiff merely stated without elaboration that defendant "intentionally, willfully, and repeatedly violated the FLSA.").

Moreover, recent legal authority from this District suggests not only that Defendants did not willfully misclassify Plaintiff as an independent contractor, but that Plaintiff's status is legally correct. In the recent SDNY case *New York Taxi Workers Alliance, et al., v. Uber Technologies, Inc.,* Judge Hellerstein denied plaintiffs' motion for conditional certification of drivers using Uber's Driver App. *New York Taxi Workers Alliance v. Uber Techs., Inc.*, No. 16-cv-4098 (AKH), 2017 WL 10402923, (S.D.N.Y. Apr. 7, 2017) (Dkts. 98-99). In denying conditional certification, Judge Hellerstein determined that there were too many considerations which weighed in favor of independent contractor status of the drivers, including but not limited to: their ability to choose exactly when they worked, their ability to drive with competing rideshare services, and their personal selection and ownership of the vehicles they chose to drive. *Id.* at Dkt. 99, 25:11-27:3.

This in and of itself, negates any determination of willfulness, as Defendants' classification of drivers, at least preliminarily, has been supported by this Court.[10]

In sum, Plaintiff has failed to plead facts sufficient to support a willful finding, and therefore his FLSA claims for damages more than two years prior to the filing of his FAC must be dismissed as untimely. *Whiteside*, 995 F.3d at 324 (affirming dismissal of FLSA willful claim where plaintiff ailed to plead factual content beyond bare elements of cause of action); *Rowlett v. Michigan Bell*, No. 11–cv–1269, 2013 WL 308881, at *2 (W.D. Mich. Oct. 4, 2012) (dismissing FLSA claims as time-barred where plaintiff made "the conclusory assertion that [defendant] acted willfully," but "failed to allege any facts which would establish such").

## IV.    THIS COURT LACKS PERSONAL JURISDICTION OVER OUT-OF-STATE PLAINTIFFS AND CLAIMS

In Plaintiff's FAC, he seeks to "to prosecute his FLSA claim as a Collective Action on behalf of all individuals who during the relevant time period are or were Uber drivers *in the United States* classified as 'independent contractors' and who opted out of Uber's arbitration agreement." (FAC, ¶55) (emphasis supplied). However, this Court does not have personal jurisdiction over Plaintiff's claims on behalf of putative collective members who have neither resided in New York nor driven with Defendants in New York. Any such FLSA collective claims must be dismissed, and Plaintiff's putative collective action must be limited to claims arising out of activity within New York.

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 272

---

[10] On April 29, 2019, the Department of Labor issued an opinion letter similarly suggesting that Uber's classification of drivers as independent contractors was correct. *See* U.S. Department of Labor WHD Opinion Letter, FLSA2019-6 (April 29, 2019). Though the letter was later withdrawn by the Biden administration, the issuance of the letter likewise negates any potential finding of willfulness.

(S.D.N.Y. 2019) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)). First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." Third, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci*, 673 F.3d at 59-60.

If the federal law does not specifically provide a statutory basis for national service of process, then a federal court applies the forum state's personal jurisdiction rules. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)). The FLSA does not provide for nationwide service of process (*see Pettenato*, 425 F. Supp. 3d at 273); therefore, New York state law applies. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).

To determine personal jurisdiction over a non-domiciliary—such as jurisdiction over a non-citizen defendant with respect to claims by a putative collective action member who does not reside in New York—the court "first applies the forum state's long-arm statute." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "If the long-arm statute permits personal jurisdiction," the court then analyzes "whether personal jurisdiction comports with due process protections established under the Constitution." *Id.* (quoting *Chloé*, 616 F.3d at 164). "To assess whether the exercise of personal jurisdiction comports with due process, the court must ordinarily determine whether the defendant has minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 69 (2d Cir. 2022) (quoting *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir. 2009)).

Pursuant to this Constitutional framework, the Court may exercise two types of personal jurisdiction over a foreign corporate defendant under New York law, either general or specific.

### A. Defendants Are Not Subject To New York's General Jurisdiction Statute As It Pertains To Out-Of-State Opt-In Plaintiffs.

Section 301 of the New York Civil Practice Law & Rules allows courts to exercise general jurisdiction over "persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. § 301. Under this provision, general jurisdiction may only be conferred when a foreign corporation's affiliations with the forum state are so "continuous and systematic as to render it essentially at home there." *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 277 (E.D.N.Y. 2016). For this inquiry, a corporation is only considered "at home" where it is incorporated or where it has its principal place of business. *Brown v. Lockheed Martin Grp*., 814 F.3d 619, 627 (2d Cir. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (a corporation's continuous activity in a state is not enough to "support the demand that the corporation be amenable to suit unrelated to that activity.")). Here, the Court does not have general jurisdiction over Defendants because they are incorporated in Delaware, and Plaintiff concedes all Defendants' principal places of business are in California. (Chan Decl., ¶¶ 5-7; FAC, ¶¶ 14-16.)

### B. There Is No Specific Jurisdiction For Claims Arising Outside Of New York.

Under New York law, "a court may exercise specific jurisdiction over any non-domiciliary…who…transacts any business within the state," provided the claims arise out of the business' particular acts within the State. *See* N.Y. C.P.L.R. 302(a)(1). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, *San Francisco Cnty.,* 137 S.Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

(2011)). Absent any connection between the forum and the underlying controversy that takes place in the forum state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Applying these principles, the U.S. Supreme Court in *Bristol-Myers* found that California could not exercise specific personal jurisdiction over claims asserted by non-residents who did not claim to have suffered harm in that state. *Id.* at 1782. The *Bristol-Myers* case, however, did not expressly involve FLSA claims and courts have been divided on whether its analysis and holding apply to FLSA claims. *Perez Perez v. Escobar Constr., Inc.*, 540 F. Supp. 3d 395, 408 (S.D.N.Y. 2021) (citing *Pettenato*, 425 F. Supp. 3d at 275 (collecting cases)). The weight of persuasive authority and analysis, including from three of the four Circuit Courts that have addressed this question, have determined that *Bristol-Myers* precludes certification of a nationwide FLSA collective based on lack of jurisdiction over opt-in plaintiffs. Compare *Fischer v. Federal Express Corp.*, 42 F.4th 366, 387-88 (3d Cir. 2022) (holding *Bristol-Myers* precludes out-of-state opt-in plaintiffs); *Canaday v. Anthem Cos.*, 9 F.4th 392, 397 (6th Cir. 2021) (holding *Bristol-Myers* precludes certification), and *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) (same) with *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) (finding that Bristol-Myers does not preclude). This Court has adopted the majority position in *Pettenato v. Beacon Health,* 425 F. Supp. 3d 264, 278–79, *Perez Perez v. Escobar Constr., Inc.*, 540 F. Supp. 3d at 408, and most recently, *Bethel v. BlueMercury, Inc.*, No. 21 CIV. 2743 (KPF), 2022 WL 3594575, at *1 (S.D.N.Y. Aug. 22, 2022).

In *Pettenato,* this Court held that:

> [b]ecause the FLSA does not provide for nationwide service of process, and because [defendant] has not consented to this Court's jurisdiction over it with respect to the claims of the out-of-state plaintiffs, the Court looks to New York law and the Due Process

> Clause to determine whether there is a sufficient nexus between those employees' claims – which are based on conduct which took place entirely outside New York – and defendants' activity in New York. Neither permits this Court's exercise of specific personal jurisdiction over those employees' claims. N.Y. C.P.L.R. § 302(a)(1) does not provide jurisdiction, because the out-of-state plaintiffs' claims "do not arise" from [defendant's] transaction of business in New York. Even assuming, arguendo, that New York's long-arm statute provided a basis for personal jurisdiction, I would conclude that the exercise of personal jurisdiction in this case would violate due process. As explained in *Roy* applying the "'settled principles regarding specific jurisdiction' articulated in *Bristol-Myers*," there is a lack of connection "between the forum and the underlying controversy" sufficient to provide the Court with specific personal jurisdiction over [defendant] with respect to the out-of-state employees' FLSA claims at issue here.

425 F. Supp. 3d 264, 278–79 (S.D.N.Y. 2019); *see also Perez Perez,* 2021 WL 2012300, at *8.

Lastly, in *Bethel,* this Court determined that:

> [b]ecause plaintiffs have not, and indeed cannot, demonstrate a connection between the claims brought by the individual [plaintiffs] who worked outside of New York and New York itself, "[i]t follows that the [New York] courts cannot claim specific jurisdiction" over these claims.

2022 WL 3594575, at *11 (internal citations and quotations omitted). The *Bethel* court continued, stating, "[i]ndeed, a court may not exercise jurisdiction in a manner repugnant to the Constitution…" *Id.* at *12. Ultimately, the Court determined that because Congress has yet to make such an amendment to the FLSA providing for nationwide service of process, "and because Defendant is not subject to general jurisdiction in New York, the Court cannot exercise personal jurisdiction over the out-of-state opt-in plaintiffs." (*Id.*)

This Court should adopt the reasoning set forth in *Bristol-Myers,* which has been recently affirmed by several Circuits as applied to the FLSA, as well as by this Court, and dismiss the claims of all opt-in or potential opt-in plaintiffs who neither resided in nor drove with Defendants in New York.

## V.   THE COURT SHOULD DENY PLAINTIFF ANY OPPORTUNITY TO AMEND THE FAC

Should this Court entirely or partially dismiss Plaintiff's claims against Defendants, Plaintiff should not be permitted a second chance to amend his FAC.  Although Fed. R. Civ. P. 15(a) requires leave to amend a complaint to be freely given when justice so requires, "it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it…Such a futile request to replead should be denied.").

Here, Plaintiff has not once, but twice failed to plead facts sufficient to show a plausible entitlement to relief – even when the facts pled are assumed to be true and all reasonable inferences are drawn in his favor. In the face of Defendants' original Motion to Dismiss, Plaintiff dropped a cause of action and only added three paragraphs of factual averments. Plaintiff has presumably added all of the factual detail that he has at his disposal. Therefore, if Plaintiff's FAC is legally deficient, there is no valid reason to believe Plaintiff would fare any better if offered a third bite at the apple.

## VI.   CONCLUSION

Because Plaintiff fails to state claims upon which relief may be granted, the Court should grant Defendants' motion to dismiss its entirety and dismiss Plaintiff's FAC with prejudice. In the alternative, the Court should dismiss Plaintiff's FLSA collective action claims based on lack of jurisdiction to the extent asserted on behalf of out-of-state drivers.

Dated:  September 26, 2022
       New York, New York

LITTLER MENDELSON, P.C.

By: */s/ Andrew M. Spruchise*

    Andrew M. Spruchise
    Thelma Akpan
    LITTLER MENDELSON, P.C.
    900 Third Avenue
    New York, NY 10022
    Telephone: (212) 583-9600
    aspruchise@littler.com
    takpan@littler.com

    Joshua C. Vaughn (PA ID No. 203040)
    LITTLER MENDELSON, P.C.
    625 Liberty Avenue, 26th Floor
    Pittsburgh, PA 15222
    Telephone: 412.201.7677
    jvaughn@littler.com
    *Admitted Pro Hac Vice*

    *Attorneys for Defendants*
    *Uber Technologies, Inc., Rasier, LLC, and*
    *Schleuder, LLC*

4863-6216-0689.10 / 073208-2514