**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ANTHONY AQUINO, individually and on
behalf of all others similarly situated, et al.,

         Plaintiffs,

    -against-

 UBER TECHNOLOGIES, INC., et al.,
         Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/20/2023

**22-CV-4267 (KHP)**

**OPINION & ORDER**

**KATHARINE H. PARKER, United States Magistrate Judge**:

 Anthony Aquino ("Plaintiff") is a driver for Uber Technologies, Inc. ("Uber").  He brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and the New York Labor Law ("NYLL"), Article 6 § 190 and Article 19 § 650, on behalf of himself and a putative class and collective of other Uber drivers who opted-out of an arbitration provision in the agreement governing his relationship with Uber.  Plaintiff contends that he was misclassified as an independent contractor and not paid minimum wage after accounting for mandated but unreimbursed business expenses.  The Defendants – Uber, Rasier, LLC, and Schleuder, LLC ("Defendants") – have moved pursuant to Federal Rule of Civil Procedure 12(b) to dismiss the First Amended Complaint ("FAC") for failure to state a claim and for lack of personal jurisdiction over out-of-state Plaintiffs.  For the reasons set forth below, the motion to dismiss is GRANTED.

## BACKGROUND

**1.  Facts Alleged in the Complaint**

 Plaintiff, a resident of the Bronx, worked as an Uber driver from April 2022 to at least August 2022.  (FAC ¶ 10.)

Uber is a transportation services company that operates a mobile phone application that dispatches drivers.  Raiser, LLC ("Raiser") is a wholly-owned subsidiary of Uber that processes all payments to Uber drivers.  Schleuder, LLC ("Schleuder") is a subsidiary of Uber that apparently managed Plaintiff's opt-out from arbitration.  All three companies are headquartered in San Francisco, California and collectively referred to as Uber.  (*Id.* at ¶¶ 14-16.)

To become an Uber driver and access the Uber Driver Application ("Driver App"), drivers must agree to a Platform Access Agreement ("PAA").[1]  The PAA became effective on or about March 15, 2021.  (Id. at ¶ 33.)  The PAA includes an arbitration agreement, which requires drivers to resolve disputes with Uber through final and binding arbitration.  (*Id.* at ¶¶ 22-24.)  Acceptance of the arbitration agreement is not required to drive for Uber, and drivers may opt out by sending an email to Uber.  Plaintiff notified Defendants by email on three occasions in April 2022 that he would be opting out of the arbitration agreement in the PAA.

The PAA contains various requirements and terms for Uber drivers, including that they maintain car insurance, may not share their log in credentials with others, must submit to a background check and may be denied access to the platform as a result of that check, must monitor their vehicles and keep them in good repair, must report any accidents and cooperate with any investigations into same, must maintain the confidentiality of certain rider information, and may be removed the platform for various other conduct.  (Chan Decl., Ex. A.)

---

[1] *Platform Access Agreement* (Mar. 15, 2021), https://tb-static.uber.com/prod/reddog/country/UnitedStates/licensed/f9fbbc90-bc3c-4ff5-879e-c20246f666ac.pdf.  The Court considers the PAA without converting Defendants' motion to dismiss into one for summary judgment because Plaintiff has incorporated the document by reference in the FAC, which heavily relies on the terms of the PAA.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The PAA grants drivers "a limited license to use, wear, or display" Uber-branded materials when providing services for Uber. (*Id.*)[2]

To access Uber and begin driving, drivers use electronic mobile devices to log in to and access the Driver App. Uber encourages drivers to use their own mobile device without reimbursement. (FAC ¶ 35.) If the driver chooses to use an Uber provided device, the driver must reimburse Uber for the costs associated with the device. (*Id.*) Uber assigns drivers a Driver ID, which allows them to begin providing services on Uber. Once logged in, the driver app matches a driver to rides requested. (FAC ¶ 36.) Uber assigns a passenger to the driver, providing the passenger's location. However, the Driver App does not disclose the passenger's destination until the driver has picked up the passenger. (*Id.* at ¶ 37.) If the driver cancels the ride once the destination is provided, the driver receives a negative review, which could potentially lead to deactivation of the driver's account. Once the driver picks up the passenger, Uber recommends a route for the driver on the Driver App. (*Id.* at ¶ 38.) Uber sets the rates and fares for the driver's services and may adjust this fare if the driver takes an inefficient route. (*Id.* at ¶¶ 36-38.)

As part of its driver policies, Uber automatically logs drivers out from the Driver App after 12 hours of work and makes it impossible for drivers to work again for at least the next eight hours. (*Id.* at ¶ 32.) Uber also has certain policies for temporary deactivation of the Driver App. For example, when a New Jersey Uber driver enters New York to perform a drop

---

[2] Plaintiff also cites to Uber's former employment contract, the Technology Services Agreement ("TSA"). (FAC ¶ 34.) As Plaintiff admits this agreement was replaced by the PAA and is no longer in place, the Court relies only on the PAA and not the TSA.

off, Defendants shut off the app so that the driver cannot be assigned a paid ride back to New Jersey.  (*Id.*)

Plaintiff worked on only three days for Uber.  The first was on April 7, 2022.  Plaintiff, who lives in the Bronx but drove for Uber only in Westchester, drove 70 minutes round trip to and from his "designated wait spot" in Westchester County.  He was logged into the Driver App for 1 hour and 30 minutes while waiting for ride requests and drove only 20 minutes that day, for which he received a payment of $19.25.  (FAC ¶ 25.)  On April 13, 2022, Plaintiff again drove 70 minutes round trip to and from his waiting spot in Westchester County.  He was logged into the Uber application for 90 minutes while waiting for rides and had only one customer, for which he received a payment of $10.31.  The complaint is silent as to the amount of time he spent driving the customer.  (*Id.* at ¶ 26.)  Lastly, on April 19, 2022, Plaintiff drove 70 minutes round trip to and from his waiting spot in Westchester County.  He was logged into the Uber application for 48 minutes waiting for ride requests and again had only one customer.  He received a payment of $17.32 for that one ride.  Again, the complaint is silent as to the amount of time he spent driving the customer.  (*Id.* at ¶ 27.)  Plaintiff alleges that he incurred several "out of pocket" costs associated with his work for Uber including vehicle maintenance and repairs, ride share insurance, and gas.  (*Id.* at ¶ 46.)  Plaintiff alleges he paid $119 for vehicle rideshare insurance coverage a month and $100 a month for maintenance.  (*Id.* at ¶ 51.)  He also alleges that that the IRS publishes a standard mileage reimbursement rate for businesses, which was 56 cents per mile in 2021 and 58.5 cents a mile in 2022.  (FAC ¶¶ 48-49.)  However, the complaint is silent as to the miles he drove for the three customers on the three days he worked.  (*Id.* at ¶ 48.)

**LEGAL STANDARD**

Defendants argue that the FAC fails to allege sufficient facts to render it plausible that he was an employee as opposed to an independent contractor and that he was required to incur the specific business expenses he asserts brought his pay below the minimum wage.  They also assert that the FAC fails to include sufficient facts to render it plausible that the time Plaintiff spent logged into the Uber application while waiting for rides was compensable time. They assert the FAC fails to include facts rendering it plausible that the alleged violations were willful.  And, finally, they argue that this Court has no jurisdiction over out-of-state plaintiffs who might opt-into the suit in the future or who might be part of any class or collective certified in the future.

### 1.  Legal Standard Governing Motion to Dismiss Under Rule 12(b)(6)

A complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, but the plaintiff must provide facts that plausibly suggest an entitlement to relief — "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). So too, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam). Additionally, it must draw all reasonable inferences in plaintiff's favor and must confine its review to the pleading, documents incorporated therein by reference, and matters of which a court may take judicial notice.  *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

### 2.  Legal Standard Governing Motion to Dismiss Under Rule 12(b)(2)

It is the plaintiff's burden, when served with a Rule 12(b)(2) motion to dismiss, to establish that the court has jurisdiction over the defendants.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted).  A plaintiff may carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction."  *Id.* (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998)).  The court "must credit a plaintiff's allegations in support of jurisdiction."  *PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 321 (S.D.N.Y. 2021) (citing *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

Federal Rule of Civil Procedure 12(h) provides that "[a] party waives" a Rule 12(b)(2) defense by "failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment . . . as a matter of course."  Fed. R. Civ. P. 12(h).

### DISCUSSION

### 1.  *Whether the Amended Complaint Plausibly Alleges that Defendants Are "Employers"*

To be held liable under the FLSA, one must be an "employer," which the statute defines broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The definition is broad, and courts must construe the statue broadly in light of its remedial nature.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Herman v. RSR Sec. Servs. LTD.*, 172 F.3d 132, 139 (2d Cir. 1999).  The critical inquiry is whether the person "possessed the power to control the workers in question . . .  with an eye to the 'economic reality' presented by the facts of each case."  *Herman*, 172 F.3d at 139.  The "economic reality" test is designed to constrain the otherwise broadly applicable plain language of the statute,

which "taken literally would support liability against any agent or employee with supervisory power over [other] employees." *Johnson v. A.P. Products, LTD.*, 934 F. Supp. 625, 628-29 (S.D.N.Y. 1996) (citation omitted); *Hernandez v. Lira of New York Inc.*, 2023 WL 2647639, at *4 (S.D.N.Y. Mar. 27, 2023).

Factors relevant to determining whether individuals are "employees" or independent contractors within the meaning of the FLSA include "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988) (citing *United States v. Silk*, 331 U.S. 704, 716 (1947)).  No factor is dispositive, and the test is based on the totality of the circumstances.  *Id.*; *Calderon v. Koneska Health*, 2023 WL 2612216, at *2 (S.D.N.Y. Mar. 22, 2023).

The Complaint contains sufficient facts to render it plausible that the Defendants were "employers" under the FLSA and that Plaintiff was an "employee" under the statute.  Examining the first factor under the FLSA, the Complaint alleges that Uber controls Plaintiff's and other drivers' ability to access the Driver App, sets the terms of use, mandates specified maintenance and insurance for drivers' vehicles, sets a fare and the driver's corresponding compensation, and reserves the right to remove drivers from the Driver App.  The Complaint also alleges that Uber controls the hours and locations that the drivers work and will log the driver out from the Driver App after 12 hours of work.  These facts are sufficient at the pleading stage to render it plausible that Uber exercises control over drivers consistent with that of an employer over an

employee.  Under the remaining factors, it is undisputed that the drivers do not share in Uber's profit or invest in the business, there is a low degree of skill to work as a driver, and the work is integral to the employer's business—that is, Uber depends on drivers for its business.  Thus, these facts also support the plausibility of Plaintiff's claim that he was an employee and not an independent contractor.  While the factor considering the duration and permanence of the relationship weighs against finding an employee-employer relationship here given Plaintiff only drove for Uber for less than eight hours over three days and could admittedly work for other ride share companies while also driving for Uber, this factor is not dispositive at this stage of the case.  At the motion to dismiss stage, the Court does not weigh the factors but merely assesses whether there are sufficient facts pleaded to render it plausible that Plaintiff could demonstrate he was an employee under the economic realities test at a later stage in the case. *Harper v. New York City Hous. Auth.*, 673 F. Supp. 2d 174, 180 (S.D.N.Y. 2009) (finding a plaintiff need only allege facts supporting a plausible inference to survive a motion to dismiss but need not make out a prima facie case according to factors that would be needed to be proved at a later stage).  Here, there are sufficient facts pleaded for purposes of withstanding a Rule 12(b)(6) motion on the issue of whether Plaintiff may have been misclassified as an independent contractor.

The NYLL has a similarly broad definition of "employee."  N.Y. Lab. L. § 190.  The test for employee status under the NYLL focuses on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results[.]"  *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1093 (2003).  The factors relevant to control include whether "the worker (1) worked at his own convenience, (2) was free to engage

in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id.*   In most cases, an individual who is deemed to be an "employee" under the FLSA is also found to be an "employee" under the NYLL because of the similarity of the tests.  *Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 536 (S.D.N.Y. 2014), *order clarified*, 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014), *aff'd sub nom. Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131 (2d Cir. 2017); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)").  Thus, for the same reasons discussed above, the FAC alleges sufficient facts to render it plausible Plaintiff was an employee of Uber within the meaning of the NYLL.

It is notable that in a similar case, the Third Circuit found that material issues of fact precluded summary judgment on the issue of whether an Uber driver was an employee within the meaning of the FLSA.  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 145-46 (3d Cir. 2020), amended, 979 F.3d 192 (3d Cir. 2020).  The facts pleaded in this case are similar to those pleaded in *Razak* and are sufficient to survive a motion to dismiss on this issue.  In contrast, the Ninth Circuit upheld dismissal of a complaint against Uber on the grounds that the plaintiff driver had not pleaded sufficient facts to render it plausible he was misclassified as an independent contractor.  *Carter v. Rasier-CA, LLC*, 2017 WL 4098858, at *2 (N.D. Cal. Sept. 15, 2017), *aff'd*, 724 F. App'x 586 (9th Cir. 2018).  However, that dismissal was without prejudice to allow Plaintiff to amend the complaint to plead employee-employer status, and the facts pleaded in *Carter* were more cursory than those alleged here.

Defendants rely on *Saleem* to argue that Plaintiff has not adequately alleged an employee-employer relationship because he has failed to demonstrate Defendants' "actual exercise" of control over him in actuality and not what was merely conceivable.  854 F.3d at 149.  *Saleem* involved drivers for a black car service who claimed they were misclassified as independent contractors and not paid appropriate wages.  However, *Saleem* was decided on a motion for summary judgment, not on a motion to dismiss.  Thus, the Court evaluated evidence—something this Court cannot do under the Rule 12(b)(6) standard.  The Court in *Saleem* acknowledged the fact-intensive nature of the economic realities test and noted that courts must focus on the actual experience of the plaintiff and not just contract provisions governing the alleged employment relationship.  In other words, the facts on the ground might differ from what the contract specified or contemplated about the relationship between the worker and entity.   For this reason, the district court acknowledged that "courts in other cases involving private car drivers to reach different results depending on the particulars of the given case."  *Saleem*, 52 F. Supp. 3d at 536.  Thus, *Saleem* is not helpful to Defendants' argument that this relationship was inadequately pleaded. Therefore, *Saleem* does not support dismissal of the case at the pleading stage.

The other cases on which Defendants rely are distinguishable based on what was pleaded and the basis for the holdings*. See also Tyler v. Uber Techs., Inc.*, 487 F. Supp. 3d 27, 33-36 (D.D.C. 2020) (granting motion to dismiss for failure to adequately plead an employer-employee relationship where the complaint alleged only that Uber keeps track of passenger reviews and contained conclusory statements that Uber controls and directs drivers); *Hassell v. Uber Techs., Inc.*, 2020 WL 7173218, at *6 (N.D. Cal. Dec. 7, 2020) (granting motion to dismiss

because plaintiffs did not adequately allege minimum wage violations and not because of

deficiencies with pleading an employer-employee relationship); *Lee v. Postmates Inc.*, 2018 WL

6605659, at *10 (N.D. Cal. Dec. 17, 2018) (granting motion to dismiss because the minimum

wage violation was inadequately pleaded where only general allegations were made).

### 2. *Whether the Complaint Plausibly Alleges a Claim for Failure to Pay Minimum Wage*

Under the FLSA, employers are required to pay employees a minimum wage of $7.25

per hour.  29 U.S.C. § 206.  The New York State minimum wage in Westchester was $15 per

hour during Plaintiff's employment.  N.Y. Lab. L. § 652.  Plaintiff alleges Uber did not pay him

minimum wage under both the FLSA and NYLL for the 3 hours and 48 minutes that Plaintiff was

logged into the Uber app and because he had unreimbursed business expenses that dropped

him below the federal minimum wage.

#### a.  Whether Plaintiff Adequately Alleged Waiting Time

Plaintiff alleges that the 3 hours and 48 minutes he spent logged into the Driver App was

compensable working time.  Waiting time may be compensable when an employee is engaged

to wait as opposed to waiting to be engaged.  *Skidmore v. Swift*, 323 U.S. 134 (1944).  The

determination of which one of the two applies is fact intensive and involves "scrutiny and

construction of the agreements between particular parties, appraisal of their practical

construction of the working agreement by conduct, consideration of the nature of the service,

and its relation to the waiting time, and all of the circumstances."  *Id.*; *see also* 29 C.F.R. §

785.14.

An employee is engaged to wait when the "employee is unable to use the time

effectively for his own purposes" and the time "belongs to and is controlled by the employer."

29 C.F.R. § 785.15.  Usually this inactive time is "unpredictable" and "usually of short duration"

such that employees cannot effectively use the time for their own purposes even if allowed to

leave the premises or job site.  *Id.*  Some examples include a stenographer who reads a book

while waiting for dictation, a messenger who works a crossword puzzle while awaiting

assignments, and a fireman who plays checkers while waiting for alarms.  The time that an

employee spends waiting for work assignments is compensable if the waiting time is spent

"primarily for the benefit of the employer and his business."  *Moon v. Kwon*, 248 F. Supp. 2d

201, 229 (S.D.N.Y. 2002) (citing *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971

F.2d 347, 350 (9th Cir. 1992)).  For example, a limousine driver's time waiting between

assignments was found to be compensable time even though he was allowed to use the vehicle

for personal use because he was required to stay in the vicinity of the vehicle, stay dressed in

uniform, and be prepared to take on unexpected assignments in the interim.  *Lassen v. Hoyt

Livery, Inc.*, 120 F. Supp. 3d 165, 176 (D. Conn. 2015).

In contrast, waiting time is not compensable when the employee is waiting to be

engaged.  An employee will be considered off-the-clock when the employee is "completely

relieved from duty" and where the period is "long enough to enable [the employee] to use the

time effectively for his own purposes" and is "told in advance that he may leave the job and

that he will not have to commence work until a definitely specified hour has arrived."  19 C.F.R.

§ 785.16.  For example, a maintenance hotel worker's waiting time was found not to be

compensable time when the employee was expected to be available to answer emergency calls

while he was sleeping at the hotel overnight because the calls only occurred three times a

month and the fact that he was present at the hotel was insufficient to show that he was on duty. *Moon*, 248 F. Supp. 2d at 230.

Here, Plaintiff argues compensable time was adequately pleaded because Plaintiff could not receive ride requests outside of the designated area in which he was waiting and there was nothing for Plaintiff to do but wait in his vehicle for ride requests, including other work or recreational activities. (Pl's Opp. Br. 10.) But, in the FAC, Plaintiff only states that he drove 70 minutes round trip to his "Uber-designated wait spot in Westchester County where he could activate the Uber Driver App to receive trip requests." (FAC ¶ 25.) Plaintiff does not allege that he cannot do anything but wait in his vehicle for ride requests. Plaintiff does not allege how often the requests come in or how many requests he must accept, nor does he state that it is Uber's policy that he may not do other work at the same time, including driving for another rideshare company. In fact, it appears from the document incorporated into the FAC that Plaintiff could accept rides from another rideshare entity. Additionally, Plaintiff appears to have chosen the dates he wanted to work and the time periods he wanted to work. In other words, it is unclear why Plaintiff was unable to use the waiting time "effectively for his own purposes" or why the waiting time "belongs to and is controlled by Uber." The sparse facts pleaded simply are insufficient to plausibly support a claim that Plaintiff was "engaged to be waiting" as opposed to "waiting to be engaged." *See Watkins v. First Student, Inc.*, 2018 WL 1135480, at *11 (S.D.N.Y. Feb. 28, 2018) (finding Plaintiff did not adequately allege waiting time where Plaintiff did not specify whether she was required to wait at work or had to remain ready for unexpected assignments); *c.f. Sikiotis v. Vitesse Worldwide Chaufeeured Servs.*, Inc., 147 F. Supp. 3d 39, 45 (D. Conn. 2015) (finding Plaintiff adequately pleaded his waiting time was

compensable where he stated he was required to "wait and be on call," do "non-driving tasks," was unable "to engage in personal activities," and had to show up fifteen minutes prior to a scheduled pickup).

In other districts, cases involving Uber have similarly found that simply alleging that drivers should accept most rides is not sufficient to allege that the time spent waiting was "waiting to be engaged".  For example, in *Yucesoy v. Uber Techs., Inc.*, the court found Plaintiffs did not plead specific facts to support their claim that waiting time is compensable where they only generally alleged they were required to accept "most" requests to avoid the risk of being deactivated by Uber but did not explain how often the requests came in, how many of the requests they must accept, and the magnitude of the risk of deactivation.  2016 WL 493189, at *6 (N.D. Cal Feb. 9, 2016).

Similar to Plaintiff's federal minimum wage claim, his claim under the NYLL relies on waiting time being compensable time.  Whether waiting time is compensable under the NYLL is evaluated under the same standard as determined under the FLSA.  *See Moon*, 248 F. Supp. 2d at 230; *Campbell v. Empire Merchants, LLC*, 2018 WL 5456666, at *7 (E.D.N.Y. Aug. 27, 2018), *report and recommendation adopted*, 2019 WL 2206065 (E.D.N.Y. May 22, 2019) (dismissing NYLL claim where minimum wage was not adequately pleaded for failure to adequately allege waiting time).  Therefore, for the same reasons stated above, Plaintiff has not adequately pleaded that the time he spent waiting for ride assignments was compensable for purposes of claiming a minimum wage violation under the NYLL.

Accordingly, Plaintiff did not adequately plead that his waiting time was compensable for the purposes of stating a claim for minimum wage under the FLSA and NYLL.  Given this, the

Court is left to consider whether Plaintiff has alleged minimum wage violations based on the time Plaintiff actually spent driving customers, which would be compensable time.  However, the complaint only provides actual time driving customers on Plaintiff's first day of work. Specifically, he drove a customer that day for 20 minutes.  The Court cannot discern how much time was spent driving customers on days two and three based on the allegations in the complaint.  Thus, the FAC fails to plead how many hours of compensable time Plaintiff actually worked.  This is a sufficient basis to dismiss the complaint. *See Oliver v. Rio Acquisition Partners, LLC*, 2019 WL 801952, at *3 (S.D.N.Y. Feb. 21, 2019) (dismissing minimum wage claim where plaintiff did not plead number of hours worked); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (affirming dismissal of overtime claim where plaintiff did not plead number of hours worked).

### b.  Whether Plaintiff Adequately Alleged a Minimum Wage Violation Based on Unreimbursed Business Expenses

Plaintiff concedes his total pay of $46.88 for 3 hours and 48 minutes of waiting time means that he was paid above the federal minimum wage absent consideration of business expenses.  He proposes that a monthly car maintenance cost of $100 and a monthly rideshare insurance cost of $119 be deducted from the total wages he earned on the three days he chose to work and that this demonstrates he lost money by driving for Uber and in fact was  not paid minimum wage.  (FAC ¶ 51.)  Plaintiff's proposed method for deducting these business expenses is not grounded in any legal authority.

Both the FLSA and NYLL allow employers to shift the cost of business expenses to the employee as long as the expenses do not reduce the employee's wage below the minimum wage. *Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010)

(applying the same analysis to find that plaintiff inadequately pleaded business expenses reduced plaintiff's wages under minimum wage for both the FLSA and NYLL); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013).  Business expenses are those incurred "primarily for the benefit or convenience of the employer."  29 C.F.R. § 531.3.  However, if such expenses "cut[ ] into the minimum or overtime wages required to be paid ... under the Act," the employer must reimburse the employee for them.  *Johnson v. Equinox Holdings, Inc.*, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (citing 29 C.F.R. §§ 531.32(c), 531.35).

Plaintiff alleges in his complaint that he worked for 3 hours and 48 minutes based on the time he was logged into the Uber application and that he had three customers during this time. He asserts he drove one customer for 20 minutes but does not provide the miles he drove.  The complaint does not provide how much time he spent driving customers on day two or three or the miles he drove customers on these days.   In the opposition brief, plaintiff confusingly suggests he drove 2 hours and 38 minutes while logged into the Driver App.[3]  This suggests that he drove customers 2 hours and 18 minutes on days two and three, based on the allegation that he drove a customer for only 20 minutes on day one.  However, this suggestion is at odds with the allegations in the complaint that Plaintiff spent 2 hours and 18 minutes logged into the Driver App and only got two customers on those days.  (*Id.* at ¶¶ 25-27.)

If the Court nevertheless assumes that Plaintiff drove 20 minutes on day one and 2 hours and 18 minutes combined for days two and three for the sake of argument, then the total

---

[3] In Plaintiff's opposition to the motion to dismiss, he states that he spent 160 minutes driving on April 13 and 118 minutes on April 19, but these include a 70-minute round trip drive to and from his home to his designated waiting spot in Westchester.  By deduction, then, it appears the total time Plaintiff spent driving customers was 90 minutes on April 13 and 48 minutes on April 19.  (Pl's Br. 12 n.4.)  The Court notes that this is the same time that Plaintiff alleged in the FAC that he spent on the Driver App.

driving time was two hours and 38 minutes.  Dividing this time by the full amount paid results in

an hourly rate of $17.80.  This is well above the federal and state minimum wage rate and is

necessarily lower than what it would be if the Court knew how much time Plaintiff actually

spent driving customers.[4]

Some guidance on how an employee's use of a personal car should be accounted for is

found in the Department of Labor's Field Operations Handbook ("FOH"), which is an operations

manual that provides Wage and Hour Division investigators and staff with interpretations of the

FLSA, among other statutory provisions, and general administrative guidance.[5]  The FOH states

that as an enforcement policy, the IRS standard business mileage rate found in IRS Publication

917 may be used in reference to an employer's wage payment practices for FLSA purposes.  The

IRS standard business mileage rate is inclusive of depreciation, maintenance and repairs,

gasoline, oil, insurance, and vehicle registration fees.  *Id.*  For April 2022, the IRS standard

mileage rate for business use of a personal vehicle was 58.5 cents per mile.[6]  However, Plaintiff

does not allege the number of miles he drove for Uber or perform any kind of calculations

based on the IRS standard mileage applicable at the relevant time.  Thus, the Court is unable to

calculate costs based on the standard mileage rate to ascertain whether the unreimbursed

mileage would bring Plaintiff's pay below the minimum wage.

Use of the standard business mileage rate is optional, and an employee may instead

account for actual expenses, according to IRS' guidance.[7]  If the car is used exclusively for

---

[4] Even if the Court accepted that Plaintiff adequately pleaded compensable waiting time, Plaintiff's hourly pay for 3 hours and 48 minutes would be $12.34 per hour.  This is well above the federal minimum wage rate.
[5] Dep't of Lab., *Field Operations Handbook*, https://www.dol.gov/agencies/whd/field-operations-handbook.
[6] IRS, *Standard Mileage Rates*, https://www.irs.gov/tax-professionals/standard-mileage-rates.
[7] IRS, *Topic No. 510 Business Use of Car*, https://www.irs.gov/taxtopics/tc510.

business, the car expenses can be deducted in full.  If the car is used for both business and

personal purposes, as here, expenses must be divided based on actual mileage, which is

determined by the portion of total driven miles that are business miles.  *See Levine v. Comm'r of

Internal Revenue*, 2017 WL 3394127, at *6–7 (T.C. Aug. 7, 2017) (applying the actual expense

method by apportioning by business mileage); *Hatmaker v. PJ Ohio, LLC*, 2019 WL 5725043, at

*7 (S.D. Ohio Nov. 5, 2019) (following the FOH and IRS guidance for applying either drivers'

actual expenses or the IRS' standard mileage reimbursement).  Notably, commuting expenses

between home and a business location are not deductible for tax purposes and are not

considered business expenses for FLSA and NYLL purposes.  *Colella v. City of New York*, 986 F.

Supp. 2d 320, 338 (S.D.N.Y. 2013); *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 300 (S.D.N.Y.

2019) (citing *Beecher v. TWC Admin. LLC*, 2016 WL 11113685, at *6 (W.D.N.Y. Aug. 22, 2016)

("The NYLL does not differ from the FLSA as to the compensation of commutes").  Based on the

FAC, the Court cannot calculate Plaintiff's actual expenses because Plaintiff does not allege any

facts about his mileage driving for Uber versus personal use and does not make any attempt to

do any calculations in the FAC.

Plaintiff argues that the Court should simply deduct the $219 monthly expense from the

amount he was paid for driving less than four hours in the month even though he admits in the

complaint that he was not restricted by Uber from driving more hours and days.  Rather, the

only restriction imposed on his ability to earn money from driving noted was that the Driver

App automatically logs out drivers after 12 hours of driving and does not permit a driver to log

back in until 8 hours of rest.  (FAC ¶ 32.)  Thus, in April 2022, it was theoretically possible for

Plaintiff to have logged into the Driver App for 252 hours.[8]  Assuming Plaintiff only wanted to work a standard 40-hour work week, Monday-Friday, there were 21 workdays in April 2022.  In other words, he could have worked 168 hours in April if he elected to work all weekdays for only 8 hours each day.  If the $219 in monthly expenses is allocated on an hourly basis on the above hypothetical standard workweek schedule, then $1.30 of the $219 could be attributed to each hour of work.  If the Court were to reduce the hypothetical hourly rate of $17.80 per hour calculated above by $1.30, the effective hourly rate would still be above the federal minimum wage rate (and the state minimum wage rate).  The mileage calculation might be more advantageous to Plaintiff in ascertaining whether he earned less than minimum wage factoring in mileage.  However, the Court cannot make this calculation because Plaintiff does not provide the miles he drove customers or even the total time he spent driving customers.

Plaintiff argues in his opposition brief that the Court should use a business expense deduction methodology of his own invention.  First, that the Court should deduct the full amount of the rideshare insurance from his total wages for only three days of work and also deduct mileage for his commute and time spent driving customers.  He asserts in his brief – not based on anything alleged in the FAC, that the Court should assume he always drove a constant speed of 30 miles per hour and that he drove 90 minutes on day one (70 minutes commuting and 20 minutes driving a customer), 160 minutes on day two (70 minutes commuting and 90 minutes logged into the Driver App), and 118 minutes on day three (70 minutes commuting and 48 minutes logged into the Driver App).  Plaintiff contends this computation reflects that he

---

[8] The Court calculated this number by multiplying the 12 hours that Uber permits drivers to work by the number of weekdays in April 2022 or 21 days.

drove 45 miles on April 7, 80 miles on April 13, and 59 miles on April 19.  He then multiplies

these miles by the IRS reimbursement rate that he alleged in the FAC of $0.56 (which did not

apply in 2022).  This calculation would result in mileage reimbursement of $103.04.  Thus, he

proposes that his total wages for the three days working should be reduced by a total of

$222.04.  This methodology results in Plaintiff losing money from driving Uber and not earning

a minimum wage.

      There are several issues with Plaintiff's calculations.  First, Plaintiff's calculations ignore

the IRS' guidance that an employee deducting costs may either use actual costs or the standard

mileage rates.[9]  Plaintiff uses a combination of both by pleading his actual insurance costs and

using the standard mileage rate.  This calculation, therefore, is not appropriate.  Second, FOH

guidance provides that mileage takes into account fuel, maintenance, and insurance.  In other

words, Plaintiff is double counting deductions for insurance.  Third, Plaintiff does not plead

miles driven in the FAC or the speed he drove, rendering his calculation inappropriate based on

the facts pleaded.  Instead, Plaintiff includes time spent waiting for rides in his "driving" time –

inflating his mileage calculation.  Fourth, Plaintiff includes commuting time in his calculation

when such time is not compensable work time or mileage that can be deemed a business

expense.  29 C.F.R. § 785.35.  Finally, Plaintiff asks the court to take a monthly fixed fee in the

form of insurance that was $119 and simply accept that it should be allocated to only three

days of work when the complaint indicates that Plaintiff was free to work far more hours in the

---

[9] IRS, *IRS issues standard mileage rates for 2022*, https://www.irs.gov/newsroom/irs-issues-standard-mileage-rates-for-2022.

month.  He provides no authority for this method of allocation, nor is the Court aware of any that would support it.

Therefore, even after accepting every factual allegation in the complaint as true and drawing all inferences regarding compensable time and business expenses in Plaintiff's favor, Plaintiff failed to adequately plead a minimum wage violation under the FLSA and NYLL.  Thus, Defendants' motion to dismiss Plaintiff's minimum wage claims is granted.

### 3.  *Whether the Complaint Plausibly Alleges a Claim for Willful Violation*

Claims brought under the FLSA and the NYLL are subject to different statutes of limitations.  Under the FLSA, claims are subject to a two-year statute of limitations if the violation is not willful and a three-year statute of limitations if the violation is willful.  *See Pineda v. Masonry Const. Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (citing 29 U.S.C. § 255(a)).  Claims brought pursuant to the NYLL are subject to a six-year statute of limitations.  *See Byer v. Periodontal Health Specialists of Rochester, PLLC,* 2021 WL 3276725, at *2 (2d Cir. 2021) (citing NYLL § 663(1), (3)).  To show that there was a willful violation, a plaintiff must show that the employer knew or showed reckless disregard for whether the conduct was prohibited by the statute.  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

Defendants argue that Plaintiff has failed to plead facts sufficient to support a claim for a willful violation of the FLSA, requiring dismissal of the complaint to the extent it seeks to include damages outside the two-year statute of limitation.  The Court need not reach this issue at the pleading stage in light of the Court's dismissals of Plaintiff's wage claims and because Plaintiff's individual claims were timely within the two-year statute of limitations period.

### 4.   *Whether the Court has Personal Jurisdiction Over Out-of-State Plaintiffs*

Defendants argue that a class or collective must be limited to drivers located in New York because this Court lacks both specific and general jurisdiction to adjudicate claims by out-of-state drivers against Uber, which is not incorporated in New York and whose principal place of business is also not in New York.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016); *Best Van Lines, Inc. v. Walker*, 490 F. 3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)); *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 278-79 (S.D.N.Y. 2019); *Bethel v. BlueMercury, Inc.*, 2022 WL 3594575, at *8 (S.D.N.Y. Aug. 22, 2022).

The Court need not address this argument in light of the Court's dismissal of Plaintiff's claims and because Plaintiff has withdrawn his claims to the extent that they were asserted on behalf of Uber drivers outside of New York.

### CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is granted without prejudice.  Plaintiff shall follow the Court's order at ECF No. 68 regarding any proposed amended pleading.

**SO ORDERED.**

Dated: April 20, 2023
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge