**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ANTHONY AQUINO, individually and on
behalf of all others similarly situated, et al.,

                                 Plaintiffs,          **22-CV-4267 (KHP)**

            -against-

                                                      **OPINION & ORDER**

UBER TECHNOLOGIES, INC., et al.,
                                Defendants.
-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**:

       Anthony Aquino ("Plaintiff") is a driver for Uber Technologies, Inc. ("Uber") who contends that he was misclassified as an independent contractor and not paid the minimum wage after accounting for mandated but unreimbursed business expenses. He brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and the New York Labor Law ("NYLL"), Article 6 § 190 and Article 19 § 650, on behalf of himself and a putative class and collective of other Uber drivers who opted-out of an arbitration provision in the agreement governing his relationship with Uber.

       The Defendants – Uber, Rasier, LLC, and Schleuder, LLC ("Defendants") – previously moved to dismiss the First Amended Complaint ("FAC"), which the Court granted without prejudice. (ECF No. 69) Plaintiff has moved to amend on the ground that the proposed Second Amended Complaint ("SAC") cures the factual deficiencies identified in the Court's decision dismissing the FAC. Defendants oppose on the ground that the additional facts alleged still fail to plausibly plead a claim for violation of the FLSA. For the reasons set forth below, the motion to amend is GRANTED.

**BACKGROUND**

The Court previously detailed the facts alleged in this case in its prior decision and assumes familiarity with them. (ECF No. 69) For purposes of this decision, the Court summarizes those facts for context and includes only those additional, newly alleged facts relevant to the issues presented in the instant motion. These issues are (1) whether the SAC plausibly pleads that the time Plaintiff spent logged into the Uber app waiting to receive rides was compensable waiting time and (2) whether the SAC plausibly pleads that certain unreimbursed expenses for gas, insurance, wear and tear of Plaintiff's car, and cell charges incurred while driving passengers for Uber were primarily for the benefit or convenience of Uber and, if so, whether they reduced his wages below the federal and state minimum wage rate.[1] If the answer to the above questions is no, then there is no plausible federal or state minimum wage claim and the proposed amendment would be futile.

1. **Facts Alleged in the Complaint**

Plaintiff, a resident of the Bronx, worked as an Uber driver on three different days in April 2022 – April 7, April 13, and April 19. (SAC ¶ 10.) Because he was not licensed by the New York City Taxi and Limousine Commission to drive in New York City, he had to drive to Westchester to receive ride requests. (*Id.* ¶¶ 25-26) On each of the three days he worked, he drove to a "wait spot" in Westchester identified by another Uber driver and then signed into the Uber app to await a ride request. (*Id.* ¶¶ 25-28)

---

[1] Defendants' opposition brief also alleges that the SAC fails to plausibly plead that commuting time is compensable. The Court previously recognized that commuting time is not compensable (and Plaintiff does not dispute this), so this point is not addressed herein.

On April 7, 2022, Plaintiff was logged into the Uber app for 1 hour and 30 minutes and drove passengers for only 20 of those minutes in a single ride that was approximately 15 miles. He was paid $19.25 for that ride. Plaintiff does not state whether he received other ride requests but states he does not recall turning down any ride requests. (*Id*. ¶¶ 26, 32)

On April 13, 2022, Plaintiff was logged into the Uber app for 1 hour and 30 minutes and drove passengers for only 10 minutes during that time in a single ride that was approximately 7.5 miles. He was paid $10.31 for the trip. Plaintiff does not state whether he received other ride requests but states he does not recall turning down any ride requests. (*Id*. ¶¶ 27, 32)

On April 19, 2022, Plaintiff was logged into the Uber app for 48 minutes and drove passengers for only twenty of those minutes in a single ride that covered approximately 15 miles. He was paid $17.32 for that one ride. Plaintiff does not state whether he received other ride requests but states he does not recall turning down any ride requests. (*Id*. ¶¶ 28, 32)

In total, over the three days in question, Plaintiff was logged into the Uber app for 3 hours and 48 minutes. Plaintiff earned a total of $46.88 for the 3 rides. Uber's records show that Plaintiff's 3 rides totaled 44 miles – slightly more than Plaintiff's estimate of 37.5 miles. (*Id*. ¶¶ 29-30)

During the hours he was logged into the Uber app, Plaintiff alleges that he was not able to eat, sleep or engage in personal activities because he had to constantly monitor the app for ride requests and accept them within 15 seconds or else he would lose the ride. While he also was approved to make deliveries for Uber Eats – a separate app -- while driving for Uber, he declined an unspecified number of Uber Eats delivery requests while logged into the Uber app. (*Id*. at ¶¶ 31-34) He does not state whether he made any deliveries for Uber Eats during the 3

hours and 48 minutes he was logged into the Uber app or whether he was logged into Uber Eats during the entire 3 hours and 48 minute period he was also logged into the Uber app. He acknowledges that Uber permitted him to work for competing driving apps, such as Lyft, while logged into the Uber app but asserts that it was impracticable to do so because failure to accept a ride when requested through Uber would negatively impact his ability to get future ride requests from Uber. In particular, he contends that he had to accept at least 80% of Uber ride requests or there would be negative consequences to his ability to continue to obtain rides. (*Id*. at ¶¶ 32-33, 48)

While an Uber driver, Plaintiff was subject to the terms of the Platform Access Agreement ("PAA").[2] (*Id.* at ¶¶ 22-24) The PAA contains various requirements and terms for Uber drivers, including that they must maintain car insurance, monitor their vehicles and keep them in good repair, and may be removed from the platform for various other conduct. (*Id.* at ¶¶ 33-34, 44, 49-50, 61)

Plaintiff asserts that certain rules and guidelines in the PAA or other Uber documents made it clear that he had to maintain a clean vehicle, could not eat while driving a passenger, nor have personal friends or family in the car while driving a passenger. (*Id*. at ¶¶ 31, 34) For these reasons, he alleges that he did not bring food, books, magazines or other personal items in the car for fear his ratings would be affected or he would miss a ride request and, thus, he could not do anything at all but monitor the Uber app. (*Id*. at ¶¶ 31-34, 45-49)

---

[2] *Platform Access Agreement* (Mar. 15, 2021), https://tb-static.uber.com/prod/reddog/country/UnitedStates/licensed/f9fbbc90-bc3c-4ff5-879e-c20246f666ac.pdf. The Court considers the PAA without converting Defendants' motion to dismiss into one for summary judgment because Plaintiff has incorporated the document by reference in the FAC, which heavily relies on the terms of the PAA. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Plaintiff alleges that he incurred "out of pocket" costs associated with his work for Uber including vehicle maintenance and repairs, ride share insurance, and gas. (*Id.* at ¶ 11) Plaintiff alleges he paid $119 a month for vehicle rideshare insurance coverage, $100 a month for vehicle maintenance, and $350 a month for gas. (*Id.*) He alleges that Uber encourages drivers to use their personal mobile devices to log into the Uber app and does not reimburse drivers for the necessary wireless data plan, which cost Plaintiff $60 per month. (*Id*. at ¶¶ 11, 50) These amounts (which total $629 per month) were not reimbursed by Uber, yet, according to Plaintiff, they were allegedly necessarily incurred and/or required by Uber. (*Id*.)

The SAC confusingly states Uber represented it will reimburse employees for business expenses in a company manual, and through conduct in reimbursing such expenses, (*Id*. at ¶ 62) yet requires drivers to bear the costs of vehicle maintenance and repairs, insurance, and gas (*Id*. at ¶ 61). The SAC is silent on whether Plaintiff ever sought reimbursement pursuant to Uber's alleged policy and practice. The SAC also confusingly states that Uber failed to reimburse Plaintiff for business expenses incurred while working for Lyft – suggesting that Plaintiff might have also worked for Lyft during the time he was logged into the Uber app. (*Id*. at ¶ 63)

2. **Plaintiff's Wage Calculation**

Based on his claims that he worked 3 hours and 48 minutes for Uber – the total time he was logged into the Uber app – and was not reimbursed for necessary and required expenses, Plaintiff alleges he was not paid the federal or state minimum wage rate. The applicable federal minimum wage rate is $7.25 per hour and the applicable state minimum wage rate is $15 per hour. 29 U.S.C. § 206; N.Y. Lab. L. § 652.

Plaintiff arrives at this conclusion regarding his rate of pay through two alternative calculations. Under the first method, using the 2022 IRS standard mileage rate for business use of a personal vehicle set at .585 cents per mile, he says incurred $25.74 of reimbursable expenses (44 miles x .585). He subtracts this from the $46.88 he was paid to arrive at a net pay amount of $21.14. He then divides that amount by the 3 hours and 48 minutes to arrive at an hourly rate that is about $5.56 per hour.[3]

Alternatively, Plaintiff allocates his total monthly vehicle and cell phone expenses of $629 across the total miles he drove, which he estimates to be 1,000 in the month of April. (*Id*. at ¶ 37) This results in business expenses of $27.68 for the 44 miles (or $23.59 for 37.5 miles) he drove for Uber. Either way, if these business expenses are subtracted from his total pay and all 3 hours and 48 minutes he was logged into the Uber app count as compensable work time, Plaintiff was paid less than the federal and state minimum wage rates.

There is no dispute that Plaintiff drove passengers for Uber for only 50 minutes in the days he worked. Thus, he concedes that if time logged into the Uber app waiting for ride requests is not compensable time, he was paid above the federal and state minimum wage rates even when accounting for expenses.

## LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or

---

[3] Plaintiff also computes the hourly rate assuming he drove only 37.5 miles instead of the 44 miles that Uber reported he drove. This results in a higher hourly rate of $6.56, but still one that is less than the federal and state minimum wage rates.

21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).

Proposed amendments are futile when they would fail to state a claim under Rule 12(b)(6). *IBEW Local Union No. 58 Pension Tr. Fun & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ms, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile." *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010) (citation omitted). Because a determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6), "futility is generally adjudicated without resort to any outside evidence," and the court must accept all facts pleaded as true. *Wingate v. Gives*, 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009) (citing *Nettis v. Levitt*, 241 F.3d 186, 194, n.4 (2d Cir. 2001)). On a motion to dismiss, in order for a complaint to survive, the court must determine that the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual

7

allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id.* It must contain more than naked assertions devoid of "further factual enhancement." *Id.* Furthermore, when a party alleges fraud as a cause of action, the factual allegations must meet the heightened pleading standard of Rule 9(b). *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016).

## DISCUSSION

### 1. *Whether the Complaint Plausibly Alleges a Claim for Failure to Pay Minimum Wage*

#### a. **Whether Plaintiff Adequately Alleged Waiting Time**

Plaintiff alleges that the 3 hours and 48 minutes he spent logged into the Driver App was compensable working time. Waiting time may be compensable when an employee is engaged to wait as opposed to waiting to be engaged. *Skidmore v. Swift*, 323 U.S. 134 (1944). The determination of which one of the two applies is fact intensive and involves "scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the circumstances." *Id.*; *see also* 29 C.F.R. § 785.14.

An employee is engaged to wait when the "employee is unable to use the time effectively for his own purposes" and, crucially, the time "belongs to and is controlled by the employer." 29 C.F.R. § 785.15. Usually this inactive time is "unpredictable" and "of short duration" such that employees cannot effectively use the time for their own purposes even if allowed to leave the premises or job site. *Id.* Some examples include a stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while

8

awaiting assignments, and a fireman who plays checkers while waiting for alarms.  The time that an employee spends waiting for work assignments is compensable if the waiting time is spent "primarily for the benefit of the employer and his business."  *Moon v. Kwon*, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002) (citing *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350 (9th Cir. 1992)).  For example, a limousine driver's time waiting between assignments was found to be compensable time even though he was allowed to use the vehicle for personal use because he was required to stay in the vicinity of the vehicle, stay dressed in uniform, and be prepared to take on unexpected assignments in the interim.  *Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 176 (D. Conn. 2015).

In contrast, waiting time is not compensable when the employee is waiting to be engaged.  An employee will be considered off-the-clock when the employee is "completely relieved from duty" and where the period is "long enough to enable [the employee] to use the time effectively for his own purposes" and is "told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived."  19 C.F.R. § 785.16.  For example, a maintenance hotel worker's waiting time was found not to be compensable time when the employee was expected to be available to answer emergency calls while he was sleeping at the hotel overnight because the calls only occurred three times a month and the fact that he was present at the hotel was insufficient to show that he was on duty.  *Moon*, 248 F. Supp. 2d at 230.

Thus, the issue of whether waiting time is compensable depends on whether the time is (1) controlled or required by the employer and (2) pursued necessarily and primarily for the benefit of the employer.  *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 528 (2d Cir. 1998)

("what qualifies as compensable work under the FLSA is determined by whether the employee's activity is controlled or required by the employer, is necessarily and primarily for the benefit of the employer, and is an integral and indispensable part of the job"). Ultimately, determination of this issue is based on all the facts and circumstances of a case. *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008).

Plaintiff has included additional information about the time he spent logged into the Uber app in the SAC to support his claim that all that time is compensable time. He now pleads he could not do anything but wait in his vehicle for ride requests while logged in because he had to accept ride requests within 15 seconds of receiving the request or lose the ride and could suffer other negative consequences if he declined/did not accept at least 80% of ride requests – details not previously provided. (SAC ¶¶ 31-34, 48) He previously failed to plead how often the ride requests came in but now states that he does not recall declining any requests. This suggests only one ride request came in each day he was logged into the app.[4] (*Id*. at ¶ 32) Whereas previously Plaintiff did not state whether Uber's policy precluded him from doing other work, he now acknowledges that he was permitted to work for competing apps such as Lyft and Uber Eats. The SAC states that Plaintiff declined deliveries from Uber Eats but is unclear whether he was logged into Uber Eats or Lyft during the same times he was logged into the Uber app. (*Id*. at ¶¶ 32-33, 63) It is also unclear how many requests for Uber Eats came in during the time Plaintiff was also logged into the Uber app or whether Plaintiff accepted any deliveries for Uber Eats while logged into the Uber app. Plaintiff also provided

---

[4] Defendants state that their records show that Plaintiff received 17 ride requests during the time he was logged into the Uber app over the three days and that he rejected 11 such requests. The Court cannot consider this information because it is outside of the pleading.

more details in the SAC as to why he could not effectively work for competing apps or engage in personal pursuits such as reading a book while logged into the Uber app – blaming Uber's policies requiring him to respond to ride requests within 15 seconds and maintain a clean vehicle and negative consequences for declining more than a certain percentage of ride requests. (Id. at ¶¶ 31-34)

Defendants dispute Plaintiff's allegations and suggest that there are no negative consequences for declining rides, that Plaintiff alone controls his hours, that other drivers are able to juggle work for multiple apps at the same time and to engage in personal pursuits while waiting for ride requests. However, the Court does not have a sufficient record to determine this.

For example, the SAC is silent as to when each of Plaintiff's Uber trips occurred during the alleged waiting period – that is, was the waiting time before or after each ride? That is, it is unclear what the duration of the waiting time was in relation to the drives. For instance, on April 13, 2022, Plaintiff was logged into the Uber app for one hour and thirty minutes and drove only 10 of those minutes. Was he waiting for an hour and twenty minutes before getting the ride, or did he accept a ride at the beginning of his shift and then wait for another hour and twenty minutes but receive no ride requests before logging out, or was there waiting time before and after or between rides? Waiting time is usually a short duration, such that the duration and its relation to the beginning and end of the rides Plaintiff provided through Uber is relevant to a determination of whether the waiting time is compensable.

Other potentially relevant questions include whether Uber imposed a minimum log-in time, whether Uber automatically logs a driver out of the app after a set period when no rides

have been accepted, whether Uber has rules about how time will be attributed when a driver is logged into multiple apps, the number of ride requests Plaintiff received each day, the number of apps Plaintiff was logged into while also logged into the Uber app, the number of personal phone calls (if any) and other online activities Plaintiff engaged in while logged into the Uber app, and the extent to which Plaintiff chose the dates and times he did to log into and out of the Uber app and reasons he made those choices.

The Court is skeptical that all the time logged into the Uber app is waiting time attributable to Uber, particularly when there are no facts to suggest that Uber directed or required Plaintiff to be on call and wait for a specific time period – in contrast to all other cases involving a determination of whether waiting time is compensable time.  *See, e.g. Watkins v. First Student, Inc.*, 2018 WL 1135480, at *11 (S.D.N.Y. Feb. 28, 2018) (finding Plaintiff did not adequately allege waiting time where Plaintiff did not specify whether she was required to wait at work or had to remain ready for unexpected assignments—factors that would plausibly suggest the waiting time was for the employer's benefit); *Sikiotis v. Vitesse Worldwide Chaufeeured Servs.*, Inc., 147 F. Supp. 3d 39, 45 (D. Conn. 2015) (finding Plaintiff adequately pleaded his waiting time was compensable where he stated he was required to "wait and be on call," do "non-driving tasks," was unable "to engage in personal activities," and had to show up fifteen minutes prior to a *scheduled* pickup; complaint alleged that employer set the hours of employment); *Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 176 (employer scheduled time that driver had to be on duty and required drivers to be available six days a week and to wait up to an hour for a customer for airport pickups).

Nonetheless, there are sufficient facts pleaded to preclude dismissal on a Rule 12(b)(6) motion. Given the fact-specific inquiry needed to evaluate whether waiting time is compensable, a fuller record must be developed before a determination of the complex issues presented by this case, which involves an entirely new kind of working situation not contemplated at the time the FLSA was enacted or even when some of the seminal Supreme Court and Second Circuit decisions were issued that discuss what constitutes "work" and compensable "waiting time."

Whether waiting time is compensable under the NYLL is evaluated under the same standard as determined under the FLSA. *See Moon*, 248 F. Supp. 2d at 230; *Campbell v. Empire Merchants, LLC*, 2018 WL 5456666, at *7 (E.D.N.Y. Aug. 27, 2018), *report and recommendation adopted*, 2019 WL 2206065 (E.D.N.Y. May 22, 2019) (dismissing NYLL claim where minimum wage claim was not adequately pleaded for failure to adequately allege waiting time). Therefore, for the same reasons stated above, Plaintiff has adequately pleaded that the time he spent logged into the Uber app waiting for ride assignments was compensable for purposes of claiming a minimum wage violation under the NYLL.

### b. Whether Plaintiff Adequately Alleged a Minimum Wage Violation Based on Unreimbursed Business Expenses

Both the FLSA and NYLL allow employers to shift the cost of business expenses to the employee as long as the expenses do not reduce the employee's wage below the minimum wage. *Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) (applying the same analysis to find that plaintiff inadequately pleaded business expenses reduced plaintiff's wages under minimum wage for both the FLSA and NYLL); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013). Business expenses are those incurred "primarily

for the benefit or convenience of the employer." 29 C.F.R. § 531.3. However, if such expenses "cut[ ] into the minimum or overtime wages required to be paid ... under the Act," the employer must reimburse the employee for them. *Johnson v. Equinox Holdings, Inc.*, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (citing 29 C.F.R. §§ 531.32(c), 531.35).

Plaintiff has plausibly pleaded that the car-related expenses were primarily for the benefit of Uber insofar as he has pointed to Uber policies that require drivers to maintain their vehicles and carry appropriate insurance and that encourage drivers to use their personal cell devices to log into the Uber app.

As noted in this Court's prior opinion, business expenses associated with use of a car for work can be accounted for by using the IRS standard business mileage rate, which is inclusive of depreciation, maintenance and repairs, gasoline, oil, insurance, and vehicle registration fees. *Id.* Alternatively, an employee may account for actual expenses.[5] If a car is used for both business and personal purposes, as here, expenses must be divided based on actual mileage, which is determined by the portion of total driven miles that are business miles. *See Levine v. Comm'r of Internal Revenue*, 2017 WL 3394127, at *6–7 (T.C. Aug. 7, 2017) (applying the actual expense method by apportioning by business mileage); *Hatmaker v. PJ Ohio, LLC*, 2019 WL 5725043, at *7 (S.D. Ohio Nov. 5, 2019) (following the FOH and IRS guidance for applying either drivers' actual expenses or the IRS' standard mileage reimbursement).

In the FAC, Plaintiff failed to provide sufficient facts for the Court to determine what plausible business expenses he incurred and how those expenses could be allocated to the three rides he provided through Uber. The SAC corrects those deficiencies and provides

---

[5] IRS, *Topic No. 510 Business Use of Car*, https://www.irs.gov/taxtopics/tc510.

alternate calculations using the IRS standard mileage rate and an alternate allocation methodology based on mileage. Applying the IRS standard business mileage rate to miles driven for Uber passengers and subtracting that amount from the Plaintiff's earnings for the entire waiting period results in an effective hourly rate below the applicable federal and state minimum wage rates. This is sufficient to plausibly plead a minimum wage violation.[6]

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to amend is granted. By December 9, 2023 the parties shall provide the Court with a proposed discovery plan.

**SO ORDERED.**

Dated: November 27, 2023
    New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

---

[6] Plaintiff's alternative calculation relies on an estimate that he drove 1,000 miles in April 2022 and allocates his expenses against mileage attributable to Uber rides in that month. It is not necessary for purposes of this motion decide whether this method of calculation is appropriate because the other methodology plausibly results in a minimum wage violation.